**BORG–WARNER CORPORATION, Now Known as Burns International Services Corporation, Appellant,**

v.

**Arturo FLORES, Appellee.**

**No. 13–03–058–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Dec. 16, 2004.

Rehearing Overruled Feb. 3, 2005.

Elizabeth L. Phifer, Dallas, for appellant.

Scott W. Wert, Foster & Sear, Arlington, for appellee.

Before Chief Justice VALDEZ and Justices YAÑEZ and GARZA.

**OPINION**

Opinion by Justice GARZA.

This is an asbestos case. Arturo Flores sued Borg–Warner for damages arising from his use of brake pads manufactured by Borg–Warner that contained asbestos. The jury found Borg–Warner liable for negligence and strict liability. It also found that Borg–Warner acted with malice and awarded $50,000 in punitive damages, in addition to $103,200 in compensatory damages. Borg–Warner now appeals the

judgment by nine issues. For the reasons that follow, we affirm.

## I. Legal Sufficiency of Negligence Claim

In its first issue, Borg–Warner argues that the evidence is legally insufficient to prove negligence.[1]

### A. Standard of Review

When reviewing a legal-sufficiency point, we consider only the evidence and inferences that tend to support a finding and disregard all evidence and inferences to the contrary. *N. Am. Refractory Co. v. Easter*, 988 S.W.2d 904, 908 (Tex.App.-Corpus Christi 1999, pet. denied). If there is any evidence of probative force to support the finding (i.e., more than a mere scintilla), we will overrule the issue. *Id.*

### B. Analysis

According to Borg–Warner, there is no evidence that asbestos fibers were released from its brake pads and, thus, no evidence that its brake pads injured Flores. A fundamental principle of products liability law is that a plaintiff must prove that the defendant supplied the product that caused his or her injury. *Id.* at 909. In the context of asbestos-related claims, if there is sufficient evidence that the defendant supplied any of the asbestos to which the plaintiff was exposed, then the plaintiff has met the burden of proof. *Id.*

The following evidence supports the jury's finding that Borg–Warner's brake pads injured Flores: (1) Flores was a mechanic from 1964 to 2001; (2) as a mechanic, Flores ground new brake pads prior to installation, a process necessary to mini-

---

1. The elements for a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty. *Doe v. Boys Clubs*, 907 S.W.2d 472, 477 (Tex.1995).

mize "brake squealing"; (3) the grinding process produced visible dust, which Flores inhaled; (4) from 1972 to 1975, Flores ground brake pads manufactured by Borg–Warner; (5) Borg–Warner's brake pads contained between seven and twenty-eight percent asbestos by weight; (6) in 1998, Flores was diagnosed with asbestosis; (7) Dr. Castleman testified that brake mechanics can be exposed to asbestos by grinding brake pads, a process which produces "respirable asbestos fibers"; (8) Dr. Bukowski testified that "brake dust has been shown to ... have asbestos fibers"; and (9) Dr. Bukowski also testified that "brake dust can cause asbestosis."

Borg–Warner maintains that the evidence is insufficient because the evidence does not prove that its brake pads actually produced "respirable asbestos fibers." It compares the instant case to two decisions of this Court that involved asbestos claims. *See id.* at 911; *Celotex Corp. v. Tate,* 797 S.W.2d 197, 203 (Tex.App.-Corpus Christi 1990, writ dism'd). We disagree that our prior precedent compels reversal of the judgment in the present case.

In *Easter,* the first case cited by Borg–Warner, this Court considered whether the evidence adduced at trial was legally and factually sufficient to prove causation. *Easter,* 988 S.W.2d at 908. The plaintiffs presented evidence that the defendant's products contained asbestos. *See id.* at 909–10. In addition, the plaintiffs offered evidence that the defendant's products emitted dust containing respirable asbestos fibers, which one of the plaintiffs had inhaled. *See id.* at 911. On appeal, this Court held that the evidence was sufficient to prove the defendant's products injured both plaintiffs. *See id.* at 911.

According to Borg–Warner, the precedent set by this Court in *Easter* requires

that all asbestos plaintiffs prove the emission of respirable asbestos fibers in order to establish causation. We do not interpret *Easter* as imposing any such requirement. *Easter* relied heavily on "direct eyewitness testimony that both ... [plaintiffs] worked in the presence of the asbestos-containing product or breathed dust from the product." *Id.* at 910. According to the Court, such "evidence was legally and factually sufficient to demonstrate that ... [the plaintiffs] were exposed to dust from [the defendant's] asbestos-containing products." *Id.* Although the *Easter* opinion specifically mentioned respirable asbestos fibers, the Court did not suggest that the evidence would have been insufficient without such testimony. *See id.* at 911. To the contrary, the Court stated that "work[ing] in the presence of the asbestos-containing product" was "direct evidence" of causation and sufficient to uphold the jury's finding. *Id.* at 909.

In *Tate,* the second case cited by Borg–Warner, there was no evidence that respirable asbestos fibers were released from the defendant's product. *See Tate,* 797 S.W.2d at 203. Rather, the evidence established that the plaintiff had been exposed to and inhaled raw asbestos, which caused him to develop mesothelioma. *See id.* On appeal, this Court held that the evidence was sufficient to prove causation. *Id.*

Borg–Warner relies on *Tate* to create a distinction between exposure to raw asbestos and exposure to a product containing asbestos. According to Borg–Warner, the plaintiff in this case was required to prove the emission of respirable asbestos fibers because he was only exposed to a product containing asbestos and not to raw asbestos. We find no support for this distinction in the case law cited by Borg–War-

ner.[2]

Furthermore, even if we were to conclude that the emission of respirable asbestos fibers is necessary to prove causation, *see In re ROC Pretrial*, 131 S.W.3d 129, 136 (Tex.App.-San Antonio 2004, no pet.), the standard of review for legal sufficiency challenges would render Borg–Warner's complaint moot. We consider only the evidence that supports the verdict, *see Easter*, 988 S.W.2d at 908, and the evidence is viewed in a light that tends to support the disputed fact. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). In this case, there is evidence that (1) the plaintiff inhaled dust created by a Borg–Warner product that contained asbestos, (2) when ground for fitting, brake pads containing asbestos can produce respirable asbestos fibers that can cause asbestosis, and (3) the plaintiff suffers from asbestosis. This is more than a scintilla of evidence on causation. Borg–Warner's first issue is overruled.

## II. Legal Sufficiency of Strict Liability Claim

In its second issue, Borg–Warner argues that the jury's finding of strict liability is not supported by legally sufficient evidence. To recover compensatory damages, Flores was required to establish only one cause of action.[3] We have already

upheld the jury's finding of negligence, and therefore, we need not decide whether the evidence was legally sufficient to establish strict liability. *See* Tex.R.App. P. 47.1 (requiring opinions of court to be "as brief as practicable" and decide only the "issue[s] raised and necessary to final disposition of the case"). Borg–Warner's second issue is overruled.

## III. Legal Sufficiency of Malice Finding

In its third issue, Borg–Warner argues that the evidence is legally insufficient to support the jury's finding that it acted with malice.

Malice is defined as

(A) a specific intent by the defendant to cause substantial injury to the claimant; or

(B) an act or omission:

(i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

---

**2.** In a supplemental brief filed after submission of this case, Borg–Warner cites *In re ROC Pretrial*, 131 S.W.3d 129, 136 (Tex.App.-San Antonio 2004, no pet.) as requiring expert testimony that the asbestos in question is respirable or "friable." In *ROC Pretrial*, the San Antonio court noted that the type of asbestos that causes asbestosis is "friable" asbestos, that is, asbestos fibers that are capable of being inhaled and make their way into the lung tissue, ultimately interfering with the patient's ability to breathe. *Id.* The San Antonio court held that there was no expert testimony that spraying, sanding, or grinding a liquid paint or coating produces friable asbestos fibers likely to cause asbestosis. *Id.* This

case is fundamentally different from *ROC Pretrial*. Here, experts have testified that asbestosis can be caused by the inhalation of dust emitted from brake pads containing asbestos and that such dust contains "respirable asbestos fibers." Thus, we conclude that this case is distinguishable from *ROC Pretrial*, in which the asbestos apparently could not be inhaled. *See id.*

**3.** The jury charge used in this case instructed the jury to determine compensatory damages if it found that Borg–Warner was negligent, strictly liable, or both.

TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(7) (Vernon Supp.2003).[4] In 1995, the legislature substituted malice for gross negligence as the prerequisite for punitive damages, but it also redefined malice, through the addition of subsection (B), to mirror the definition of gross negligence articulated by the Texas Supreme Court in *Transportation Insurance Company v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994). *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 n. 2 (Tex.1998). Consequently, prior precedent regarding gross negligence is relevant to legal sufficiency of malice as redefined by section 41.001(7)(B). *See Ellender,* 968 S.W.2d at 921 n. 2.

■■■ Gross negligence includes two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Id.* at 921. Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence. *Id.* Under the first element, "extreme risk" is not a remote possibility of injury or even a high probability of minor harm; it is the likelihood of serious injury to the plaintiff. *Id.* Under the second element, actual awareness means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care. *Id.* Circumstantial evidence is sufficient to prove either element of gross negligence. *Id.*

### A. Malice–Objective Element

■■■ Borg–Warner argues that there was no evidence or legally insufficient evidence to show that use of its brake pads posed an extreme risk of harm. We disagree. Even according to Borg–Warner's version of the record, medical and scientific literature dating as far back as 1898 published in the United States, Great Britain, and Germany documented the dangers of asbestos dust. According to Dr. Castleman, between 1950 and 1968, hundreds of articles were published on the health hazards of asbestos. These articles emphasized the extraordinary dangers faced by employees, including brake mechanics, who worked with asbestos materials. According to Dr. Castleman, by 1968, it was "definitely" confirmed that exposure to asbestos can cause asbestosis, as well as other diseases. This evidence is legally sufficient to establish the objective element of malice (i.e., likelihood of serious injury).

### B. Malice–Subjective Element

■■■ Borg–Warner argues that even if the evidence is legally sufficient to prove the objective element of malice, there is no evidence that between 1972 and 1975 it had actual knowledge that use of its asbestos-containing products created an extreme risk of injury to automotive mechanics. In response, Flores argues that the dangers of asbestos have been common knowledge since at least the 1930s and

---

4. Section 41.001 of the Texas Civil Practice and Remedies Code was amended by Act of June 2, 2003, 78th Leg., ch. 204, § 13.02, 2003 TEX. GEN. LAWS 847, 887, eff. Sept. 1, 2003, but section 23.02(d) of Acts 2003, 78th Leg., ch.2004 provides that "[a]n action filed before the effective date of this Act ... is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose." The instant action was filed prior to September 1, 2003 and is therefore governed by the version of section 41.001 that was in effect prior to September 1, 2003. All citations to section 41.001 in this opinion refer to the version in effect prior to September 1, 2003.

that, as a manufacturer of asbestos products, Borg–Warner is assumed to have had such knowledge. *See Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076, 1089 (5th Cir.1973, writ denied) ("[T]he manufacturer is held to the knowledge and skill of an expert."). We agree. As a manufacturer of asbestos products, Borg–Warner should be held to the knowledge and skill of an asbestos expert. *See id.*

In this case, the jury was presented with scientific and medical knowledge spanning over a century that documented the likelihood of serious injury to workers exposed to asbestos, especially asbestos dust. Nevertheless, Borg–Warner manufactured disk brake pads that had to be ground before use, a process which produced dust containing asbestos. No warning labels were placed on the product's packaging, and as a result, users of the product, including Flores, were not cautioned to take precautionary measures to avoid exposure to the asbestos.

Even assuming *arguendo* that this evidence were insufficient, Borg–Warner's failure to invest in research promoting health and safety would suffice to establish the subjective component of malice. *See Louisiana–Pa. Corp. v. Andrade,* 19 S.W.3d 245, 247 (Tex.1999) ("Corporate safety policies, or the lack of them, can serve as the basis for a gross negligence finding."). Despite the widely-known danger of asbestos products, Borg–Warner "had a research facility for product development, testing, and research from 1956 to 1988 with a ten million dollar per year budget, and [yet] ... no percentage of gross sales were spent on research regarding asbestos and the health effects of asbestos."

Given this evidence, we conclude that the jury's finding of malice was supported by more than a scintilla of evidence. Borg–Warner's third issue is overruled.

## IV. Motion for Directed Verdict

In its fourth issue, Borg–Warner contends that the trial court erred by failing to grant its motion for directed verdict. A court may instruct a verdict if no evidence of probative force raises a fact issue on the material questions in the suit. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex.2000). A directed verdict for a defendant may be proper in two situations. First, a court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery. *Id.* Second, a trial court may direct a verdict for the defendant if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Id.*

We have already concluded that there is more than a scintilla of evidence supporting the jury's finding of negligence and malice. Borg–Warner was not entitled to a directed verdict. *See id.* Its fourth issue is overruled.

## V. Motion for JNOV

In its fifth issue, Borg–Warner argues that the trial court erred in denying its motion for a judgment notwithstanding the verdict. A court may grant a motion for judgment notwithstanding the verdict if a directed verdict would have been proper. TEX.R. CIV. P. 301; *Ft. Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991). Because Borg–Warner was not entitled to a directed verdict, the trial court did not err in denying its motion for JNOV. *See* TEX.R. CIV. P. 301; *Sbrusch,* 818 S.W.2d at 394. Its fifth issue is overruled.

## VI. Motion for New Trial

In its sixth issue, Borg–Warner argues that the trial court erred in

denying its motion for new trial because there was no evidence or legally and factually insufficient evidence to support the jury's findings regarding comparative responsibility and damages. A trial court's denial of a motion for new trial is reviewed for abuse of discretion. *See Pharo v. Chambers County*, 922 S.W.2d 945, 947 (Tex.1996). As a preliminary matter, we note that Borg–Warner has failed to provide this Court with any statement of the law regarding factual sufficiency challenges and has thus failed to preserve any error regarding factual sufficiency. TEX. R.APP. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *In re A.J.G.*, 131 S.W.3d 687, 691 (Tex.App.-Corpus Christi 2004, pet. denied). We therefore decide this issue only as it relates to the legal sufficiency of the evidence.

### A. Comparative Responsibility

Borg–Warner argues that the jury erred in assessing its responsibility at 37% because the evidence established that it was only between 4.5 and 6.25% responsible. Although mathematical calculations are provided in support of this contention, citations to the record and to relevant case law are entirely lacking in Borg–Warner's brief. *See* TEX.R.APP. P. 38.1(h). Even assuming *arguendo* that this issue has been preserved, Borg–Warner has given us no basis for concluding that the trial court abused its discretion in denying a new trial. *See Pharo*, 922 S.W.2d at 947.

### B. Damages

Borg–Warner also argues that a new trial should have been granted be-cause the damages awarded by the jury were excessive. As the Texas Supreme Court has explained, the standard of review for an excessive damages complaint is factual sufficiency of the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.1998). Borg–Warner has failed to provide a statement of the law regarding factual sufficiency and the law regarding excessive damages.[5] It has preserved nothing for this Court to review.[6] TEX.R.APP. P. 38.1(h). Borg–Warner's sixth issue is overruled.

## VII. Admission of Evidence

In its seventh issue, Borg–Warner argues that the trial court erred by admitting certain evidence into the record, including Plaintiff's Exhibit 1 and certain testimony by Dr. Castleman.

### A. Standard of Review

The admission or exclusion of evidence is a matter within the trial court's sound discretion. *Easter*, 988 S.W.2d at 914. A trial court abuses its discretion when it rules without regard for any guiding rules or principles. *Id.* An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.* To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1(a); *Easter*, 988 S.W.2d at 914. When the issue is exclusion of evidence, the reviewing court must review

---

5. Borg–Warner's sole authority on this issue is *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129 (5th Cir.1985, no writ), which was disapproved by the Texas Supreme Court in *Pustejovsky v. Rapid–Ame. Corp.*, 35 S.W.3d 643, 653 (Tex.2000).

6. This decision covers Borg–Warner's sixth issue as it relates to both compensatory and punitive damages.

the entire record to determine if error occurred. *Easter*, 988 S.W.2d at 914.

### B. Plaintiff's Exhibit 1

■ Borg–Warner contends that Plaintiff's Exhibit 1, a book authored by Dr. Castleman, was hearsay and should not have been admitted into evidence.[7] At trial, Flores offered chapter eight of Dr. Castleman's book into evidence, and Borg–Warner objected on the grounds that the book was hearsay and that a proper foundation had not been established for its admission. On appeal, Borg–Warner maintains that the trial court erred by admitting the book into evidence for the following reasons: (1) the book amounts to hearsay, *see* TEX.R. EVID. 802; (2) it does not fall under the learned-treatise exception to the hearsay rule, *see* TEX.R. EVID. 803(18); and (3) even if it does fall under the exception, the trial court had no discretion to admit the book into evidence, as rule 803(18) only allows such works to be read into the record, not be received as exhibits. *See id.*

Although Borg–Warner has argued persuasively that the trial court erred in admitting Dr. Castleman's book into evidence, it has failed to demonstrate that any such "error probably caused the rendition of an improper judgment." TEX. R.APP. P. 44.1(a). In fact, our independent review of the record shows the opposite. Dr. Castleman testified extensively regarding the contents of his book, in particular chapter eight, and Borg–Warner was given the opportunity to cross-examine him. Thus, even if chapter eight were improperly admitted into evidence, we would be unable to conclude that such an "error probably caused the rendition of an improper judgment." *Id.; see also Hous-*

*ton Lighting & Power Co. v. Klein Indep. Sch. Dist.*, 739 S.W.2d 508, 519 (Tex.App.-Houston [14th Dist.] 1987, writ denied) (holding that even if trial court erred in admitting into evidence exhibits containing studies because they were hearsay, error was harmless because experts discussed studies in detail during their trial testimony).

### C. Dr. Castleman's Testimony

■ Next, Borg–Warner argues that the trial court erred by allowing Dr. Castleman to give opinion testimony on the "absence and/or adequacy of warning labels on asbestos-containing products." At trial, Borg–Warner's counsel acknowledged to the trial court that Dr. Castleman

> was designated to testify about the medical and scientific literature, the availability of materials as a substitute [for asbestos], exposure levels of asbestos, review of documents entered into evidence in this case[,] ... his conclusions regarding Defendant's [sic] negligence, strict liability, ... [and whether] Defendants conspired to suppress information....

Although counsel for Borg–Warner objected to Dr. Castleman's testimony because "[h]e is not qualified by training or education to testify about warning labels," counsel subsequently conceded that she "certainly" could not dispute "the rest of his expertise." In doing so, she waived any error regarding Dr. Castleman's expertise except as to warning labels. *See* TEX. R.APP. P. 33.1(a).

■ As an asbestos expert, Dr. Castleman was entitled to state his opinion on mixed questions of law and fact, including whether Borg–Warner was negligent,

---

7. The book in question is BARRY I. CASTLEMAN & STEPHEN L. BERGER, ASBESTOS: MEDICAL AND LE- GAL ASPECTS (4th ed.1996).

grossly negligent (i.e., acted with malice), or strictly liable. *See* Tex.R. Evid. 704; *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex.1987) ("Fairness and efficiency dictate that an expert may state an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and is based on proper legal concepts."). Under Texas law, strict liability can be predicated on one of three different theories: (1) manufacturing defects; (2) design defects; and (3) marketing defects (i.e., inadequate warnings). *Keene Corp. v. Gardner*, 837 S.W.2d 224, 228 (Tex.App.-Dallas 1992, writ denied). Thus, Dr. Castleman was entitled to state his opinions regarding manufacturing, design, and marketing defects of Borg-Warner's products, including the inadequacy of any warnings. *See* Tex.R. Evid. 704; *Birchfield*, 747 S.W.2d at 365; *Gardner*, 837 S.W.2d at 228.

■ In overruling this issue, we note that Borg-Warner never placed any warnings on its brake pads. Dr. Castleman's testimony regarding the "absence and/or adequacy of warning labels on asbestos-containing products" was essentially that "no warning whatsoever" would not "be an adequate warning of the dangers and hazards associated with working with ... [Borg-Warner's] product, [including] grinding and milling." Given these considerations, even if an error had occurred, we would be unable to conclude that it "probably caused the rendition of an improper judgment." Tex.R.App. P. 44.1(a); *see also Schlafly v. Schlafly*, 33 S.W.3d 863, 870 (Tex.App.-Houston [14th Dist.] 2000, pet.

denied) ("To find reversible error, we must conclude that the whole case turns on the error."). Borg-Warner's seventh issue is overruled.

## VIII. Exclusion of Settled Defendants from Jury Charge

■ In its eighth issue, Borg-Warner argues that the trial court erred by excluding from the jury questions on apportioned responsibility certain parties that had settled with Flores. The statute that controls this issue, section 33.003 of the Texas Civil Practice and Remedies Code, reads as follows:

(a) The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

(1) each claimant;

(2) each defendant;

(3) each settling person; and

(4) each responsible third party who has been joined under Section 33.004.

Tex. Civ. Prac. & Rem.Code Ann. § 33.003 (Vernon 1997).[8] As the Houston court has explained, "[S]ection 33.003 only requires submission of a question on the comparative responsibility of a settling defendant if there are pleadings alleging, and evidence

---

**8.** Section 33.003 of the Texas Civil Practice and Remedies Code was amended by Act of June 2, 2003, 78th Leg., ch. 204, § 4.02, 2003 Tex. Gen. Laws 847, 855, eff. Sept. 1, 2003, but section 23.02(c) of Acts 2003, 78th Leg., ch.2004 provides that "[a]n action filed before July 1, 2003 is governed by the law in effect immediately before the change in law ... and that law is continued in effect for that purpose." The instant action was filed prior to July 1, 2003 and is therefore governed by the version of section 33.003 that was in effect prior to September 1, 2003. All citations to section 33.003 in this opinion refer to the version in effect prior to September 1, 2003.

supporting, liability on the part of the settling defendant." *Kroger Co. v. Betancourt,* 996 S.W.2d 353, 358 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *see also Rehab. Facility at Austin, Inc. v. Cooper,* 962 S.W.2d 151, 154 (Tex.App.-Austin 1998, no pet.) ("The legislature apparently did not intend to require juries to assess responsibility when none was alleged or proven.").

 Borg–Warner's brief does not identify specific evidence supporting the liability of the settling parties. *See* TEX. R.APP. P. 38.1(h) (requiring "appropriate citations to authorities and to the record"). Thus, we cannot conclude that the trial court erred by excluding them from the jury charge. *See* TEX.R. CIV. P. 278 ("The court shall submit the questions, instructions, and definitions ..., which are raised by the written pleadings and the evidence."). Borg–Warner's eighth issue is overruled.

## IX. Motion to Compel Settlement Information

 In its ninth issue, Borg–Warner contends that the trial court erred by denying its motion to compel settlement information for the purpose of obtaining a settlement credit. Before trial, Borg–Warner elected dollar-for-dollar settlement credit under chapter 33 of the remedies code. TEX. CIV. PRAC. & REM.CODE ANN. § 33.014 (Vernon 1997).[9] It therefore had the burden of proving its right to such a credit. *See Ellender,* 968 S.W.2d at 927. This burden includes proving the settlement credit amount, which can be accomplished by placing the settlement agreement or some other evidence of the settlement amount in the record. *Id.* Borg–Warner complains that it could not establish the amount of its settlement credit without evidence of the actual settlement agreements executed by Flores with other parties.

 Counsel for Flores provided Borg–Warner with a letter dated May 31, 2002, stating that the total settlement amount received by Flores was $40,125. This letter was admitted into evidence. Subsequently, on August 7, 2002, counsel for Flores submitted a second letter into evidence that stated the aggregate settlement amount as $42,125. Borg–Warner argues that these letters are insufficient to establish the total amount of settlement credit to which it is entitled because the aggregate settlement amount cannot be verified without the actual settlement agreements. We disagree. Under *Ellender,* the settlement credit amount can be established by the actual "settlement agreement *or* some other evidence of the settlement amount." *Id.* (emphasis added). There is no requirement that the actual settlement agreement be submitted into evidence in order to establish the settlement credit amount. *See id.*

The essence of Borg–Warner's complaint is that it could not verify the total settlement amount obtained by Flores and that it was therefore entitled to post-verdict discovery. Counsel for Flores objected to Borg–Warner's request to produce the actual settlement agreements because the agreements were confidential; however, counsel for Flores provided the trial court with a list of parties with whom Flores had settled and the respective set-

---

9. Section 33.014 of the Texas Civil Practice and Remedies Code was repealed by Act of June 2, 2003, 78th Leg., ch. 204, § 4.10(6), 2003 TEX. GEN. LAWS 847, 859, eff. Sept. 1, 2003. Because this action was filed before the effective date of the amendment, we apply the version of section 33.014 that was in effect prior to September 1, 2003. *See Smith v. Cudd Pressure Control, Inc.,* 126 S.W.3d 106, 109–11 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (applying section 33.014 to case filed before September 1, 2003).

tlement amounts. The trial court reviewed this information *in camera*, along with portions of the settlement agreements, and ultimately found that the settlement credit amount of $42,125 was accurate. The documents reviewed by the trial court were sealed, and Borg–Warner's designation of materials to be included in the clerk's record did not list them. Consequently, we have no means of reviewing the trial court's decision to deny discovery of the settlement agreements based on confidentiality or the effect of any such error. *See In re Frank A. Smith Sales, Inc.*, 32 S.W.3d 871, 875 (Tex.App.-Corpus Christi 2000, orig. proceeding) (explaining that "when the trial court disallows discovery and the missing discovery cannot be made part of the appellate record ... a reviewing court is unable to evaluate the effect of the trial court's alleged error on the record before it"). Borg–Warner's ninth issue is therefore overruled.

### X. Conclusions

For the aforementioned reasons, Borg–Warner's issues on appeal are overruled and the judgment of the trial court is affirmed.