# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2023

Lyle W. Cayce
Clerk

—————

No. 22-10918

—————

Antero Resources, Corporation,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

C&R Downhole Drilling Inc; Et al.,

*Defendants*,

John Kawcak,

*Third Party Defendant— Appellant/Cross-Appellee*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CV-668

———————————————————

Before Clement, Elrod, and Willett, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

This appeal involves several post-trial disagreements. Antero Resources, Corp., an oil and gas production company, sued former employee John Kawcak for breach of fiduciary duty, alleging that Kawcak abused his position of operations supervisor to award service contracts to companies owned by his close friend Tommy Robertson. Antero also alleged that, after winning the contracts, Robertson's companies deliberately delayed provid-

ing "drillout" operations, resulting in millions of dollars of overbilling.

A jury found Kawcak liable in the amount of $11,897,689.39, which consists of $11,112,140.00 in damages and $775,549.39 as recoupment for value Kawcak received as a result of the breach. The district court entered final judgment in the same amount, along with post-judgment interest. The district court ordered Kawcak to pay pre-judgment interest and to forfeit 130,170 shares of stock in Antero Midstream.

Kawcak challenges the judgment on two bases. First, he says that Antero failed to prove that it was damaged as a result of his breach of fiduciary duty. Second, he argues that the district court should have allowed him to take post-trial discovery on the amount of a settlement between Antero and Robertson, and should have discounted the judgment by that amount. Antero cross-appeals, arguing that, if the court alters the judgment, it should also vacate the disgorgement award and remand for reconsideration.

We conclude that sufficient evidence supported the jury's finding on damages. Accordingly, that portion of the judgment is AFFIRMED. We further hold that the district court's decision to deny Kawcak the opportunity to pursue post-trial discovery was an abuse of discretion. The order denying Kawcak's motion to amend the judgment is therefore VACATED. This case is REMANDED for the district court to reconsider whether to allow Kawcak to pursue discovery relating to Antero's settlement with the Robertson companies and whether to offset the judgment in light of that settlement.

I

This case centers on Kawcak's employment as operations supervisor for Antero from 2011 to 2015. Among other places, Antero owns assets in the Marcellus Shale—a geological formation that arcs through much of the Appalachian Mountains. The particular oil fields at issue are located in West Virginia. Kawcak was Antero's most senior employee for those fields; he was

"responsible for supervising vendors, overseeing expenditures, and approving invoices of up to $100,000."

Beginning in 2011, Kawcak arranged to hire service companies owned by his close friend Robertson. Robertson's companies—C&R Downhole Drilling and Big Tex Well Services—performed what are known as "drillout" operations. In hydraulic fracturing (or fracking), sections of the horizontal pipe are "plugged" in order to isolate particular mineral deposits. But the plugs must later be "drilled out" to allow the oil to flow to the surface. Robertson's companies provided this service for over 200 of Antero's wells. Eventually, Robertson's companies became Antero's exclusive provider of drillout operations.

According to Antero, Kawcak and Robertson were dealing under the table. Kawcak gave Robertson information on Antero's other drillout vendors so that he could underbid the competition. And after winning the contracts, Robertson's companies deliberately took longer than necessary to conduct drillout operations. Among other things, Robertson's employees dropped tools down the well, brought faulty equipment to the site, and allowed other equipment to freeze, all of which resulted in lengthy delays.

Kawcak benefitted from this arrangement. Robertson's companies made cash payments to him totaling $729,000. Robertson also gave Kawcak a private jet, though Kawcak maintains that he purchased the plane for between $390,000 and $430,000. In addition, Kawcak received substantial compensation from Antero: $2,666,828 in salary and bonuses, and restricted stock grants valued at $9,439,497 when they vested in 2015. He also received stock grants that had not yet vested at the time that he retired.

Eventually, Antero learned of the arrangement and sued Robertson and his companies in federal court, asserting fraud and breach of contract, among other things. Evidence of Kawcak's role came out in discovery, and

No. 22-10918

Antero added claims against him too: breach of fiduciary duty, fraud (including exemplary damages), and unjust enrichment.[1]  Antero ultimately settled with Robertson, leaving only the claims against Kawcak.  Those claims proceeded to trial in April of 2022.

The post-trial disputes center on the testimony given by Antero's expert, Steve Taylor.  Taylor utilized a three-step analysis to establish the value of Antero's loss.  First, he concluded that Robertson's companies took longer than other drillout vendors.  Taylor did this by comparing the invoices and daily completion reports submitted by C&R Drilling/Big Tex Well Services and those submitted by drillout companies Antero had used in the past.  Second, Taylor concluded that Robertson's companies faced similar working conditions as those faced by prior vendors.[2]

Third, and last, Taylor estimated the loss caused by the Robertson companies' alleged inefficiency.  He started by calculating a discount rate; the ratio of how long the Robertson companies should have taken to perform drillout services to how long it actually took them.  Taylor then multiplied the percent difference by the total amount paid to the Robertson companies across its several years of work—$150,000,000.  The product of those two figures is $11,122,140; according to Taylor, the total amount of overbilling.  Taylor also testified that the drillout delays caused "ripple effects" that impeded other contractors and resulted in an additional $20 million of damages.

One way Kawcak defended against Antero's case was to argue that

_____

[1] Antero also asserted a RICO claim, but the district court declined to present it to the jury, apparently granting Kawcak's motion for judgment as a matter of law.  The claim is not at issue here.

[2] Drillout operations might take significantly more time if a particular well poses greater difficulty.  This could be the case if, among other reasons, the well is deeper or the geological composition is more resistant to drilling.

Antero failed to prove damages.  That is so, Kawcak said, because Antero profited from its arrangement with the Robertson companies, and no drillout provider would have cost Antero less.  In addition, Kawcak offered his own testimony for the proposition that the only other available drillout provider, Fortis Energy, billed at a substantially higher daily rate than the Robertson companies.  C&R Drilling and Big Tex Well Services charged $30,000 a day whereas Fortis charged $38,000 a day.

The jury returned a verdict that was mostly favorable to Antero.  It found that Kawcak breached his fiduciary duty to Antero and that Antero should be compensated in the amount of $11,122,140.00—the amount the Robertson companies overbilled, according to Antero's expert.  The jury also found that Kawcak received $775,549.39 as a result of the breach. It further found that Kawcak committed fraud (including exemplary damages) against Antero but awarded $0 as relief.  Finally, the jury found that Kawcak did not receive unjust enrichment.

The parties then exchanged post-trial motions.  Kawcak filed a renewed motion for judgment as a matter of law, FED. R. CIV. P. 50(b), or in the alternative, to alter or amend the judgment, FED. R. CIV. P. 59(e).  He renewed his argument that Antero had failed to prove damages associated with the breach of fiduciary duty and asked the district court to set aside the $11,122,140 damages award.  Kawcak also argued that the district court should reduce the damages award by an amount equal to Antero's settlement with Robertson.  Post-trial, Kawcak maintained that the district court should order Antero to disclose the amount of the settlement, or else allow him to take discovery on that topic.

In addition to opposing the relief Kawcak sought, Antero moved for an order of disgorgement of the benefits Kawcak received in connection with his breach of fiduciary duty.  Specifically, Antero moved to alter the judgment

to add $12,106,325.20 in salary and vested stock, as well as 130,170 shares of restricted stock, which Antero held after Kawcak resigned.

The district court denied Kawcak's motions. It found that Kawcak had not timely presented his damages argument; and in the alternative, that the argument failed on the merits. The district court also declined to apply a settlement offset on the basis that Kawcak had failed to introduce evidence at trial proving the settlement and its amount.

As to disgorgement, the district court granted the motion in part. It denied relief as to Kawcak's salary and vested stock, reasoning both that Antero profited as a result of the arrangement and that it was already made substantially whole by the damages award. Finally, the court granted relief as to the restricted stock and awarded prejudgment interest. This appeal followed.

## II

Kawcak presents two issues for review. First, he contends that the damages award relating to the alleged overbilling ($11,122,140) should be vacated because Antero failed to prove that it was injured by Kawcak's breach of fiduciary duty. And second, he argues that the judgment should be offset by the amount of the Antero-Robertson settlement, and that he should be allowed to discover the relevant evidence and present it to the district court.

## A

In reviewing Kawcak's challenge to the damages award, we give great deference to the jury verdict. *See Vetter v. McAtee*, 850 F.3d 178, 185 (5th Cir. 2017). Legal conclusions are reviewed *de novo*, but we will overturn the verdict only if "the facts and inferences point so strongly and overwhelmingly in favor of one party" that no reasonably jury could have found as it did. *Id.*

This issue is whether Antero proved that it was damaged by Kawcak's

breach of fiduciary duty.[3] The parties agree that, in this diversity-jurisdiction case, Texas law applies to that question of substantive law. *See Ayres v. Sears, Roebuck & Co.*, 789 F.2d 1173, 1175 (5th Cir. 1986*)*. In Texas, a plaintiff may recover "actual damages" that were caused by a breach of fiduciary duty. *ERI Consulting Engineers v. Swinnea*, 318 S.W.3d 867, 873–74 (Tex. 2010); *see also* Restatement (Second) of Torts § 874 cmt. b (explaining that the beneficiary in a fiduciary relationship may recover damages for "harm caused by the breach of duty arising from the relation").

One recognized measure of actual damages is out-of-pocket damages. *See, e.g.*, *Jerry L. Starkey, TBDL v. Graves*, 448 S.W.3d 88, 108–09 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Rogers v. Alexander*, 244 S.W.3d 370, 387–88 (Tex. App.—Dallas 2007, pet. denied). This is the method that Antero relies on here. Out-of-pocket damages are "measured by the difference between the value expended versus the value received." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).

1

Kawcak offers two reasons why Antero failed to prove damages. First, he argues that Antero's expert, Taylor, did not prove the amount of damages that the Robertson companies allegedly overbilled. Kawcak maintains that Taylor only discussed isolated examples of time wasting, but never connected those instances to actual days of work lost. As such, Kawcak says, there is uncertainty as to the fact of damages, which in Texas is fatal to re-

---

[3] Antero also argues that Kawcak forfeited the argument that Antero did not introduce sufficient evidence of damages. But, for the reasons explained below, we concluded that Antero *did* introduce sufficient evidence. As such, we assume *arguendo* that Kawcak adequately preserved this argument. *See United States v. Hunt*, No. 20-50993, 2021 WL 6102487, at *1 (5th Cir. Dec. 23, 2021) (assuming argument was preserved, rejecting argument on the merits); *Wells v. J-M Mfg. Co.*, 652 F. App'x 268, 268 (5th Cir. 2016) (same).

covery. *See Dyll v. Adams*, 167 F.3d 945, 946–47 (5th Cir. 1999).

As an initial matter, we conclude that Kawcak's argument goes to the amount of damages, not the fact of them. That is, his argument is really that Taylor's testimony does not prove $11,122,140 worth of overbilling, not that the testimony fails to prove overbilling at all. This difference matters because Texas law allows for some uncertainty in the amount of damages. *See McKnight v. Hill & Hill Exterminators, Inc.*, 689 S.W.2d 206, 207 (Tex. 1985); *Jefferson v. Parra*, 651 S.W.3d 643, 650 (Tex. App.—Houston [14th Dist.] 2022, no pet.). Specifically, the amount of damages need only be proven "with a reasonable degree of certainty." *C&C Rd. Constr., Inc. v. SAAB Site Contractors, LP*, 574 S.W.3d 576, 590 (Tex. App.—El Paso 2019, no pet.).

Taylor's testimony calculated Antero's out-of-pocket damages to a reasonable degree of certainty, especially when viewing the evidence in favor of the verdict. Taylor followed sound analytical methods to determine how long the Robertson companies should have taken to complete the drillout services. He reviewed the hundreds of completion reports and tens of thousands of invoices, accounting for uncontrollable delays and site-specific conditions. Taylor then compared the time spent to the time taken by previous drillout providers and concluded that the Robertson companies took some percentage longer than those companies. Applied to the rates charged by the Robertson companies, Taylor calculated damages in the amount of $11,122,140. That is a perfectly rational way of approximating overbilling. *Cf. O & B Farms, Inc. v. Black*, 300 S.W.3d 418, 422 (Tex. App. 2009) (upholding damages based on estimates of number loads hauled and fuel surcharge per load).

It is true that Taylor did not conduct an invoice-by-invoice analysis, as Kawcak argues he should have done. But it does not follow that Taylor's testimony is no evidence at all. Perhaps Antero might have offered a more precise estimation of how much the Robertson companies overbilled. But all

that was required was for Antero estimate its damages "with a reasonable degree of certainty." *C&C*, 574 S.W.3d at 590. Taylor's testimony clears that bar, especially when viewed against the favorable standard of review that we apply to a jury verdict. *See Vetter*, 850 F.3d at 185.

2

Kawcak also contends that Taylor's testimony was deficient because it did not consider what rates competing drillout providers might have paid. Even if the Robertson companies took longer, so the argument goes, if they charged significantly less than other companies, Antero might have ended up paying less than if it had hired someone else. And indeed, Kawcak himself testified that the Robertson companies' daily rate ($30,000 a day) was less than the only available alternative (Fortis Energy, $38,000 a day).

This argument fails because evidence of a competitor's rate is not necessary to prove out-of-pocket damages. *See, e.g.*, *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex. 2009) (calculating out-of-pocket damages using the value paid and the value received). To show damages, Antero need only prove that the Robertson companies charged it more than the "value [Antero] received." *Anderson*, 550 S.W.3d at 614. By billing Antero more than the services it rendered, Kawcak caused Antero to incur out-of-pocket expenses. That is, Antero paid $150,000,000 in exchange for a certain number of days of work. But because the Robertson companies did not actually work on all of the days they billed, the value of the work Antero received was only $138,877,860. The difference in value is the amount overbilled. No reference to competitors' rates is needed for that statement to be true.

Moreover, the jury was not required to accept Kawcak's testimony regarding Fortis Energy's rates. As Antero points out, there are multiple reasons why the jury might not have credited Kawcak's assertion that Fortis

No. 22-10918

Energy was the only other available drillout provider, and that it would have charged more than the Robertson companies. Kawcak gave the rates strictly from memory, and his credibility was already in question because of his inconsistent answers to previous questions. In short, even if there was evidence that the Robertson companies were the cheapest drillout provider, and even if such evidence were relevant, the jury had discretion to reject that evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 820, 827 (Tex. 2005).

Sufficient evidence supports the jury's finding that Kawcak's breach of fiduciary duty harmed Antero in the amount of $11,122,140.00. *See Vetter*, 850 F.3d at 185. We affirm the damages award relating to Kawcak's breach of fiduciary duty.[4]

B

We next consider the district court's denial of Kawcak's motion to amend the judgment, in which the court rejected Kawcak's request to take post-trial discovery on the Antero-Robertson settlement.[5] The denial of such a motion is reviewed for an abuse of discretion. *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 438 (5th Cir. 2022). And discovery orders that form the basis of the district court's reason to deny a motion to amend the judgment are reviewed under the same standard. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000).

---

[4] On cross appeal, Antero argues that, if we vacate or reverse the damages award, we should also vacate the disgorgement award and remand for the district court to consider whether a different disgorgement remedy is appropriate. But we affirm the damages award, so we do not reach Antero's conditional argument.

[5] Citing Texas's one-satisfaction rule, Kawcak argued that the damages judgment should have been offset by an amount equal to the settlement between Antero and Robertson. The one-satisfaction rule applies when multiple parties cause the same damage. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991).

Because this issue involves procedure and substance, it involves a mixture of state and federal law. *Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021) ("In diversity cases, we apply state substantive law and federal procedural rules."). As a matter of substance, Texas state law explains that the defendant bears the burden to prove "its right" to a settlement credit. *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 (Tex. 2018); *see Chevron Oronite Co. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 232 (5th Cir. 2020) (applying Texas law on allocation of burden of proof). Texas law also provides that the judge, not the jury, decides whether a defendant is entitled to a settlement credit. *See Utts v. Short*, 81 S.W.3d 822, 829 (Tex. 2002); *Dalworth Restoration, Inc. v. Rife-Marshall*, 433 S.W.3d 773, 784 (Tex. App.—Fort Worth 2014, no pet.) (explaining that a "nonsettling defendant should raise a settlement-credit issue 'to the trial court[,] not the jury'") (quoting *Utts*, 81 S.W.3d at 829).

But because discovery is procedural, federal law governs the question of whether a party is entitled to take post-trial discovery. *See Camacho*, 993 F.3d at 311. Discovery after evidence has closed is typically reserved for situations where the trial reveals a new basis for seeking further information. *See United States v. Corp. Mgmt., Inc.*, 78 F.4th 727, 750 (5th Cir. 2023); *Brill v. Cochran*, No. 98-31229, 1999 WL 511904, at *2 (5th Cir. July 1, 1999) (per curiam); *see also Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008) ("Post-trial discovery is usually reserved for when a party becomes aware of new information after trial.").

In denying Kawcak's motion to amend the judgment, the district court appears to have assumed that Kawcak was required to present evidence of the settlement at trial and was categorically prohibited from pursuing that evidence after trial. That was legal error, and by definition, an abuse of discretion. *See In re Planned Parenthood Fed. of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022) (explaining that a district court abuses its discretion when it

11

applies "incorrect legal principles"). We are aware of no precedent obligating a defendant to prove the existence of a settlement credit at trial.

On the contrary, district courts frequently defer discovery relating to a third-party settlement until after trial. *See Morris v. Aircon Corp.*, No. 9:16-CV-35, 2017 WL 11630439, at *1, *3–5 (E.D. Tex. Sept. 27, 2017); *Hoerchler v. Equifax Info. Servs., LLC*, 568 F. Supp. 3d 931, 936 (N.D. Ill. 2021); *Zook v. Equifax Info. Servs., LLC*, No. 3:17-cv-2003, 2018 WL 10604347, at *3 (D. Or. July 2, 2018). Indeed, as Kawcak observes, the amount of a third-party settlement does not become relevant until after the jury reaches a verdict.[6] *See Sky View*, 555 S.W.3d at 106 (defendant did not request production of settlement documents until plaintiff moved for judgment on the verdict). In other words, a jury verdict is "new information" that puts the defendant on notice that he now needs to pursue discovery on the plaintiff's settlement with a third party. *Griffin*, 542 F.3d at 223.

Because the district court's order denying Kawcak's motion to amend the judgment rested on an erroneous understanding of the law, it must be vacated. But that does not necessarily mean that Kawcak will be entitled to take post-trial discovery on the Antero-Robertson settlement. District courts have "broad discretion . . . on discovery issues," and this discretion permits a range of allowable outcomes. *O'Malley v. U.S. Fid. & Guar. Co.*, 776 F.2d 494, 499 (5th Cir. 1985).

The parties disagree over whether Kawcak timely requested evidence of Antero's settlement with the Robertson companies. Kawcak maintains that he included a request for the settlement in his initial requests for

---

[6] The lack of relevance during trial is underscored by the fact that the district court prohibited the parties from mentioning the terms of the settlement without first obtaining the permission of the court.

production and points out that, in his pre-trial brief, he asked the district court to order Antero to disclose the amount of settlement. Antero responds that Kawcak's pre-trial brief was filed only after the discovery period had closed.

We do not decide whether Kawcak is or is not entitled to conduct post-trial discovery. It appears to be common for district courts to take up the subject of a settlement credit after trial. And Texas state courts follow that approach in the usual course. *See, e.g.*, *Dalworth Restoration*, 433 S.W.3d at 784; *Polk v. St. Angelo*, No. 03-01-356-CV, 2002 WL 1070550, at *4 (Tex. App.—Austin May 31, 2002, pet. denied); *Borg-Warner Corp. v. Flores*, 153 S.W.3d 209, 221 (Tex. App.—Corpus Christi-Edinburg 2004), *rev'd on other grounds*, 232 S.W.3d 765 (Tex. 2007). The district court is entitled to weigh these and any other appropriate considerations in the first instance. But in making that determination, the district court must account for the fact that the law generally allows for post-trial discovery of a third-party settlement.

\* \* \*

For the foregoing reasons, the component of the final judgment corresponding to the $11,122,140.00 that the jury awarded as damages for Kawcak's breach of fiduciary duty is AFFIRMED. The district court's order denying Kawcak's motion to amend the judgment is VACATED. The case is REMANDED for the district court to, consistent with this opinion, consider whether to allow Kawcak to pursue discovery relating to Antero's settlement with the Robertson companies and whether to offset the final judgment in light of that settlement.