# United States Court of Appeals for the Fifth Circuit

—————————

No. 23-50144

—————————

United States Court of Appeals
Fifth Circuit

**FILED**
April 10, 2024

Lyle W. Cayce
Clerk

Kahlig Enterprises, Incorporated,

*Plaintiff—Appellant*,

*versus*

Affiliated FM Insurance Company,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-1091

———————————————————————

Before Wiener, Haynes, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Kahlig Enterprises appeals the grant of summary judgment to its insurer, Affiliated FM Insurance Company (AFM), on claims for breach of contract and violations of the Texas Insurance Code following a storm that damaged several of Kahlig's car dealerships and a car wash.

"[I]n this diversity-jurisdiction case, Texas law applies to [these] question[s] of substantive law." *Antero Res., Corp. v. C&R Downhole Drilling Inc.*, 85 F.4th 741, 746 (5th Cir. 2023). Our review is de novo, and we apply the same standard as the district court. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is proper "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The district court found that Kahlig did not create a fact question on whether AFM breached the policy by paying the actual cash value of claimed losses rather than their replacement cost value which, under the policy, was owed only for repairs Kahlig made within two years of the loss. Without a judgment against AFM, the district court concluded that neither prejudgment interest nor attorney's fees were available under the Texas Prompt Payment of Claims Act (TPPCA). Finally, the district court rejected Kahlig's claim that it was owed more in TPPCA penalties under an earlier accrual date.

For the following reasons, we AFFIRM.

I.

AFM issued Kahlig an insurance policy effective September 1, 2018 to September 1, 2019 with all-risk coverage for direct physical loss or property damage at various commercial properties. The dispute centers on a policy provision stating that the value of the loss will be either the "cost to repair" or "to rebuild" but, if "not repaired replaced or rebuilt on the same or another site within two years from the date of loss," the value of the loss will be "the actual cash value."

On April 13, 2019, some properties were damaged by a storm. Kahlig notified AFM on April 15. By April 17 letter, AFM acknowledged the claim and requested a statement of the loss amount with supporting documentation. AFM acknowledged coverage by June 7 letter but advised that the scope of work and loss amount were under investigation. Kahlig responded, and AFM advised Kahlig that it needed to submit invoices showing actual repair work performed. On October 3, Kahlig provided a signed, sworn proof of loss but it did not share the repair information as

requested by AFM. On October 18, AFM stated that it would respond to the proof of loss within fifteen days of receiving the repair information.

AFM completed its own assessment and provided Kahlig with a statement of loss on December 18. AFM issued a $756,547.54 payment for the actual cash value in its statement of loss minus the $100,000 deductible.

Kahlig, however, demanded appraisal on January 10, 2020, which AFM refused as premature because the policy required compliance with certain provisions before appraisal could be demanded. AFM stated that, "[o]nce the information requested has been provided, and the necessary conditions are met, AFM will agree to appraisal."

Kahlig eventually sued AFM in state court, and AFM removed on the basis of diversity jurisdiction. Kahlig's amended complaint alleged common law breach of contract and breach of the duty of good faith and fair dealing, violations of Texas's Deceptive Trade Practices Act, and violations of Texas's Insurance Code, specifically for delaying investigation and payment and acting in bad faith. It sought the replacement cost value of its claimed losses, penalties and attorney's fees under the TPPCA, and prejudgment interest.

The parties eventually entered into appraisal, and an award was rendered on September 16. As an appraisal award, it did not assess whether the actual cash value or replacement cost value was the appropriate measure of loss—it merely provided a number for each of those figures. The award set out the following values: (1) replacement cost value of $1,307,934.24; (2) actual cash value of $1,169,541.39; and (3) ordinance/code upgrade coverage of $75,674.24. It noted that these were the total dollar amounts of the claim, subject to the policy's terms and provisions, and that any advanced payments and deductibles should be deducted from those totals.

AFM tendered $376,240.62, which was payment for the appraisal award's actual cash value (minus the amount previously paid and the

deductible) and TPPCA penalties based on an accrual date of October 3, 2019, the date of Kahlig's sworn proof of loss. Kahlig eventually accepted payment but maintained that it was owed more. AFM moved for summary judgment on all claims; the district court granted its motion. Kahlig appealed, briefing only its claims for breach of contract, TPPCA attorney's fees, prejudgment interest, and additional TPPCA penalties.

## II.

The parties agree that, under the policy, recovery is limited to actual cash value—rather than replacement cost value—*if* repairs were not made within two years of the loss date. Here, that means any covered repairs must have occurred by April 13, 2021, two years after the agreed upon loss date of April 13, 2019. As an initial matter, we reject Kahlig's contention that any failure to timely repair is excused because AFM was the source of delay. That is belied by the record, *see supra* Part I, and we do not consider whether such an argument would be available to Kahlig on different facts.

## A.

The district court correctly determined that the burden of proof in establishing that repairs were made within two years of the loss lies with Kahlig because the disputed provision is a contractual measure of valuing loss rather than a limitation of liability on which AFM, as insurer, would bear the burden of proof at trial. "[A] contractual limitation of liability . . . is, a cap on what the insurer will have to pay out, independent of the value of the loss." *Ayoub v. Chubb Lloyds Ins. Co. of Tex.*, 641 F. App'x 303, 307 (5th Cir. 2016).

Text and structure support AFM's argument that the provision addresses how to measure loss. The replacement cost provision is located in Section L of the policy entitled "Valuation," which establishes how losses to the covered property will be valued. Subsection 1 sets out the agreed upon default measure for valuing loss and provides that this default applies "unless

stated otherwise below or elsewhere in this Policy." The default measure is the lesser among these three measures: the cost to repair, to rebuild/replace on the same site with similar materials, or repair or rebuild/replace on the same or another site not exceeding size and capacity at loss date. That default measure is then followed by alternative measures, which replace the default measure under certain circumstances. One of those alternative measures is the replacement cost provision, which appears at subsection 12: If the property is "not repaired, replaced or rebuilt on the same or another site within two years from the date of loss," the replacement cost provision replaces the default measure with the "actual cash value."

This structure distinguishes the instant policy from that at issue in *Ayoub v. Chubb Lloyds Insurance*, in which this court held that a provision with similar language was a limitation of liability. *Id.* at 303. *Ayoub* looked to the section of the policy "as a whole," not the isolated language of that provision, "heed[ing] the [Supreme Court of Texas's] admonition not to 'isolat[e] from its surroundings or consider[] apart from other provisions a single phrase, sentence, or section of a contract.'" *Id.* at 308 (quoting *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995)). That context was very different from this one. In *Ayoub*, every sentence in the section leading up to the provision was a limitation of liability—denoted with language such as "limit of liability"—as the insurer there conceded. *Id.* at 308-09. And it would have been odd, at the very end of all of those limitations of the insurer's overall liability, to tuck in a single sentence setting forth a measure of value for only a small subset of covered losses. *Id.* at 309. But here, the disputed provision appears in the valuation section and, instead of following a series of limitations of liability, it is one of several measures of value offered as alternatives to the default measure of value.

B.

No. 23-50144

Kahlig contends that, even if the burden lies with it, it did create a fact question on whether timely repairs to skylights and leaks were made at one of the car dealerships, and it therefore should be permitted to go to trial on recovery for the replacement cost value.

Kahlig did not create a fact question on the skylight repairs. The district court properly concluded that, while Kahlig made the skylight repairs timely, it was already compensated for the repairs by AFM's December 23, 2019 payment for $756,547.54. That is because the payment was based on AFM's own statement of loss, which included an actual cash value for the skylight repairs that was equivalent to their replacement cost value.

Nor did Kahlig create a fact question on the leak repairs. At summary judgment, Kahlig pointed to letters from AFM and testimony from AFM's adjuster. Kahlig offered only the vague assertion that the letters established "that repairs were made and that [AFM] received invoices for at least some of the repairs." It did not explain how the letters established that repairs had begun nor what those repairs were. These deficiencies in Kahlig's opposition to summary judgment are dispositive because, once the burden shifts to the non-movant, it cannot "'rest upon mere allegations' in the pleadings, but must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Bank of Am. Nat'l Ass'n v. Stauffer*, 728 F. App'x 412, 412 (5th Cir. 2018) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Kahlig cannot now claim "that the district court should have pieced together the relevant assertions," and this court will not "impose that burden upon the district court or take it up" itself. *Id.* at 413 (citing *United States v. Scroggins*, 599 F.3d 433, 446-48 (5th Cir. 2010)).

## III.

We now turn to Kahlig's claim for TPPCA penalties. "To prevail under a claim for TPPCA damages under section 542.060, the insured must

6

establish: (1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with one or more sections of the TPPCA in processing or paying the claim." *Barbara Tech. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813 (Tex. 2019). The Act provides for penalties if the insurer does not pay the insured within 60 days of "receiving all items, statements, and forms reasonably requested and required under Section 542.055." Tex. Ins. Code § 542.058(a). And Section 542.060(c) provides that "[i]nterest awarded under this subsection as damages accrues beginning on the date the claim was required to be paid" and specifies that "the insurer is liable to pay the holder of the policy . . . simple interest on the amount of the claim as damages each year at the rate determined on the date of judgment by adding five percent to the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees."

The parties dispute only the correct accrual date. The district court determined that the accrual date was October 3, 2019, when Kahlig provided its signed, sworn proof of loss to AFM. The parties agree that, were this the correct accrual date, AFM's earlier payment of $62,706.77 in TPPCA penalties to Kahlig, would be sufficient. The accrual date inquiry "depend[s] on the facts and circumstances involved in a given case," including the policy at issue. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins.*, 801 F.3d 512, 522 (5th Cir. 2015).

Kahlig argues that the accrual date was June 7, 2019, when AFM acknowledged coverage for the claimed loss. But Kahlig had not yet submitted information to support a payment, which is why AFM's acknowledgement requested that Kahlig submit the dollar amount Kahlig claimed and supporting documentation for that amount. It alternatively argues that the accrual date was August 20, 2019, when AFM received estimates from Kahlig's adjuster. But this accrual date contravenes the

policy: The policy requires, for example, Kahlig to send AFM a sworn proof of loss and a detailed inventory of all property losses claimed.  The October 3, 2019 accrual date follows from this proof of loss requirement, and summary judgment was proper on this claim.

IV.

Finally, Kahlig cannot maintain a claim for prejudgment interest against AFM as, here, there is no judgment against AFM.  *See TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 471 (5th Cir. 2013).

Nor can Kahlig recover attorney's fees under the TPPCA.  Chapter 542A of the Texas Insurance Code applies to claims from certain weather events including hail and wind.  Tex. Ins. Code § 542A.001(2)(C).  Those claims governed by Chapter 542A are subject to its limitation on attorney's fees, set out at Section 542A.007(a)(3).  As the Supreme Court of Texas explained, under this provision:

> The allowable amount of attorney's fees is "calculated by . . . [first] dividing the amount to be awarded in the judgment to the claimant for the claimant's claim under the insurance policy for damage to or loss of covered property" by another amount. TEX. INS. CODE § 542A.007(a)(3)(A). The fraction generated by this initial step (which can be greater or less than 1) is then multiplied "by the total amount of reasonable and necessary attorney's fees supported at trial . . . ." *Id.* § 542A.007(a)(3)(B).

*Rodriguez v. Safeco Ins. Co. of Ind.*, 684 S.W.3d 789, 793 (Tex. 2024) (quoting TEX. INS. CODE § 542A.007(a)(3)).

The Supreme Court of Texas recently explained that where "the insurer has already paid all amounts owed under the insurance policy plus any possible statutory interest, there is not and never will be an amount to be awarded in the judgment to the claimant for the claimant's claim under the insurance policy," and the statutory formula results in attorney's fees of

zero. *Id.* (internal quotation marks omitted). That is the case here, and summary judgment was therefore also proper on Kahlig's claim for attorney's fees.

\* \* \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.