## BARRICK v. PRATT.

Circuit Court of Appeals, Fifth Circuit.
May 24, 1929.

No. 5224.

Robert C. Brickell, of Huntsville, Ala., and George W. Lilly, of Wilmington, Del., for appellant.

R. E. Smith, of Huntsville, Ala., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. Emanuel Barrick, appellant, filed a bill for an accounting of profits alleged to have been received by Tracy W. Pratt in the purchase, operation, and sale of a gas plant located at Huntsville, Ala. The bill alleges that Barrick and Pratt were joint adventurers in the purchase of the plant; and that Pratt, after he had operated it for several years, sold it at a profit but refused to account to Barrick for his share of the profits. Pratt in his answer defended on the grounds that he had bought and paid for Barrick's interest before the sale, and that the profit derived from the sale was less than the amount that was due and owing to him for advances and personal services made and rendered to the joint enterprise. The district judge personally heard the evidence on the issues thus made, and at its conclusion held that Barrick was entitled to an accounting as prayed, but that, on the evidence adduced on said accounting, there was nothing due from Pratt to Barrick. As soon as the district judge announced his decision, but not before, counsel for Barrick submitted a motion that the cause be referred to a master for the purpose of stating an account. This motion was denied and notice of appeal was immediately given. The court then stated that there were three months in which to perfect the appeal, and if before that time anything was found in the books of the gas company, which were then tendered for inspection by the attorney for the purchaser, to justify it, a rehearing would be granted. A final de-

cree was then rendered dismissing the bill of complaint.

Pratt died during the pendency of this appeal, and his administrator has been substituted as appellee.

The physical property of the gas plant was purchased at a foreclosure sale in 1917 by Pratt, Barrick, and Charles R. Adams. They organized the Huntsville Gas Company, and caused title to the property to be transferred to it, each of them taking for his interest one-third of the capital stock of $50,000. Pratt was president, Barrick secretary and treasurer, and Adams vice president of the company. They then caused the company to issue $100,000 of bonds, which they sold to the Heralds of Liberty, a fraternal organization of which at that time Pratt and Barrick were executive officers. Barrick and Adams received out of the proceeds of these bonds the amounts which they had advanced, and subsequently Barrick acquired the stock which had been issued to Adams. Pratt was not reimbursed for the amount he advanced in the purchase of the plant, nor for further advances which he made from time to time to the Huntsville Gas Company for necessary expenses of operation. According to his testimony, which was not objected to and was corroborated by cancelled checks filed in evidence, the amounts so advanced by him aggregated approximately $57,000. Pratt was in charge of the plant during the period it was owned by the Huntsville Gas Company, and there was testimony to the effect that the reasonable value of his services during that period was $15,000. Legal interest on these amounts in the sum of $20,000 was allowed. It was thus shown that the total indebtedness of the joint adventure to Pratt was approximately $92,000. In 1925 Pratt, the gas company's manager Demers, and R. E. Smith, an attorney, acquired from the Heralds of Liberty, the executive officers of which at that time were other than Pratt and Barrick, the $100,000 in bonds of the Huntsville Gas Company for $45,000. Pratt thereupon communicated with Barrick, and upon the representation that he could get "a few hundred dollars" for Barrick's stock, procured an assignment of that stock, and then sold the stock and bonds for $133,500 to the Federated Utilities, Inc. It thus appears that a profit of $87,500 was realized over and above the cost of the bonds and of Barrick's stock. Of this profit Pratt testified that he allowed $10,000 to Demers as a commission, and $25,000 to Smith as an attorney's fee, and therefore contended that the profits realized from the sale to the new purchaser were thus reduced by $35,000, which amount he sought to take credit for in the accounting.

The decree of the District Court simply held that there was nothing due from Pratt to Barrick, and this would be true even though the claims for commission and attorney's fee were rejected. This is so because if the entire profit of $87,500 be deducted from the $92,000 which was due to Pratt as advances and salary by the joint adventure, there would still be a balance of $4,500 in his favor. If Pratt's contention in regard to the allowance of the commission and attorney's fee were sustained, it would only be shown that the joint adventure owed him $39,500. Pratt asked for no alternative relief, but stood upon his payment of $1,000 for Barrick's stock, and although that defense was rejected, and in our opinion properly so because of the fiduciary relation that undoubtedly existed, yet it becomes immaterial to inquire whether the balance due Pratt was the smaller or the larger amount. In either event it is clear that he was not indebted to Barrick as a result of their joint adventure.

Evidence was submitted without objection by both parties on the question whether anything, and if so how much, was due appellant upon an accounting; and it was not until after the district judge announced his decision upon the evidence adduced that nothing was due that a motion was submitted on behalf of appellant to refer the cause to a master to state an account. We are of opinion that the motion came too late, and also that the granting or refusal of it was within the sound discretion of the trial court. It is argued that a complex and intricate account ought to be referred, and in support of that proposition counsel for appellant cite the early case of Dubourg de St. Colombe v. United States, 7 Pet. 625, 8 L. Ed. 807; also, Chicago, etc., Ry. Co. v. Tompkins, 176 U. S. 167, 20 S. Ct. 336, 44 L. Ed. 417, and Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919. But the account involved in this case does not appear to have been either complex or intricate, but on the contrary to have been simple and easily understood; its correctness depended largely upon the credibility of the witnesses who testified about it. That it was an advantage to the district judge to have these witnesses appear personally before him hardly can be denied. Equity Rule 46 specifically provides that in all trials in equity the testimony shall be

734

taken orally in open court, except as otherwise provided; and Equity Rule 59 provides that, "save in matters of account, a reference to a master shall be the exception, not the rule, and shall be made only upon a showing that some exceptional condition requires it." The importance which the Supreme Court attaches to these two rules clearly appears from the opinion of the Chief Justice in Los Angeles Brush Corporation v. James, 272 U. S. 701, 47 S. Ct. 286, 71 L. Ed. 481. We do not understand Rule 59 to mean that a trial judge ought not to hear the evidence upon matters of account where the account is not involved or complicated. Where the correctness of the account depends upon the credibility of the witnesses, it is as desirable as in other classes of cases that the testimony be taken orally before the court.

It is argued for the first time on this appeal that the trial court erred in accepting Pratt's testimony and his canceled checks as sufficient evidence of the advances made by him in the operation of the gas plant. In support of this argument it is said that the books of the gas company ought to furnish the best evidence that those advances were made. It is to be observed that the books of the gas company were available to appellant before the trial, and that a rehearing would have been granted if he had been able to show by the entries in those books that Pratt had not made any of the advances for which he claimed credit. It was competent for Pratt to show by his own testimony and by his canceled checks the advances that he had in fact made. Such evidence did not presuppose the existence of better evidence. A party cannot sit idly by and permit competent evidence to be admitted without objection, and then insist for the first time in the appellate court that it was possible for his adversary to prove his case by other and more conclusive evidence.

The decree is affirmed.