# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2024

Lyle W. Cayce
Clerk

————————

No. 23-50626

————————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ELROY WILKERSON,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CR-772-1

_____

Before WIENER, WILLETT, and DUNCAN, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

Elroy Wilkerson was convicted by a jury of producing and possessing child pornography, violations of 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B), for surreptitiously taking photographs and video recordings of a 14-year-old girl in various stages of undress. On appeal, Wilkerson argues that (1) the evidence was insufficient to support his convictions, and (2) the jury was improperly instructed. We disagree and AFFIRM his convictions.

No. 23-50626

I

While responding to a call about a possible burglary at Wilkerson's address, a sheriff's deputy spoke with a 14-year-old minor who made an "outcry" about possible criminal behavior and told the deputy that she was moving out of Wilkerson's home. The deputy relayed the information to an investigator who obtained a search warrant for Wilkerson's residence. While executing that warrant, officers informed Wilkerson that they were investigating him for taking inappropriate photographs of minor girls. Wilkerson told the officers that he didn't have any phones, but the officers recovered six cell phones from the residence. Wilkerson then told the officers "there's going to be stuff in there" but claimed "the girls had taken it." He later changed his story, admitting that "he did take some of these photos" but stating that "the girls were aware of that." Wilkerson also asked the officers "whether these girls were sexually active."

The seized cell phones underwent forensic examination, which revealed various sexually exploitative photographs and videos of a female minor. At trial, the minor testified that she lived in Wilkerson's home with her mother for two to four months. She described her bedroom as having a window, with curtains, that looked onto the driveway. There was also a bathroom, with its own door, connected to her bedroom.

The images on Wilkerson's phones covered three time periods.

The first set of images was taken from outside the minor's bedroom window on August 21, 2022 at around 11:30 p.m. Government Exhibit (GX) 32 is an image of the minor in her bedroom, fully nude but holding a towel over her body with her body angled slightly to the side. In GX 33, taken one minute later, the minor is nude, facing away from the camera and holding a towel. GX 34 depicts the minor nude from the waist down, wearing a pink

2

shirt, and with a towel on her head. GX 35 shows the minor facing the camera, still wearing the pink shirt and completely nude from the waist down.

The second set of images, also from outside the minor's bedroom window, was taken late at night one week later on August 29, 2022. GX 36 shows the nude minor facing away from the camera. GX 37 shows the minor completely nude and bending over at the waist. GX 38 was taken moments later and is a similar image showing the minor facing away from the camera, completely nude, and bending at the waist. In both GX 37 and GX 38, the minor's upper torso, though out of focus, is visible between her legs. The final image in this set, GX 39, is similar to GX 37 and GX 38 except the minor's upper torso is no longer visible.

The third set of images was taken on August 30, 2022 at about 6:55 a.m. from outside the minor's bedroom window. This set included two images. In GX 40, the minor is facing the camera completely nude with a towel draped over her shoulders, and in GX 41, taken seconds later, the minor is still completely nude and turning to her left side to reach for something.

In addition to these photographs, two videos were recovered from Wilkerson's cell phones. GX 42 is a 3:54-long video, also taken on August 30, 2022 at approximately 10:30 p.m. The video appears to show the minor exiting the shower and getting dressed. It begins with a dark screen that pans up into the minor's bedroom window. The minor enters the frame from left to right; she is completely nude and angled toward the camera, carrying a towel. The video shows her appearing to sit on her bed, with her reflection sometimes visible in the mirrors. As the minor moves throughout the room and changes positions, a male voice—identified by the minor at trial as Wilkerson's—can be heard moaning. At one point, as the minor is drying herself, she lowers her towel, exposing her back and the upper portion of her buttocks. At this point, Wilkerson states, "there you go." Further into the

video, while the minor is moving about the room, Wilkerson says "good lord." At another point, the minor returns to the frame, walking toward the camera with her towel wrapped around her head and fully nude, with her breasts and pubic area exposed. She then steps out of the frame, and several seconds later, Wilkerson says, "come on back."

The second video, GX 43, was created the next morning. It initially shows the minor exiting the bathroom with a towel wrapped around her head but otherwise completely nude. Later in the video, she appears to be holding a "pair of panties" at her waist level, above her visible pubic region. At some point, her pubic region becomes obscured. The government also introduced GX 31, which is a zoomed-in still image from this GX 43 video, showing the nude minor holding the panties.

The government also introduced 18 additional exhibits showing images that focused on the genitals and buttocks of the fully clothed minor.

The jury convicted Wilkerson of producing (Count One) and possessing (Count Two) child pornography, violations of 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B). The district court sentenced him to 118 months' imprisonment, and Wilkerson timely appealed.

II

Wilkerson preserved both of his challenges.

We review preserved sufficiency-of-the-evidence challenges *de novo* but with "substantial deference to the jury verdict."[1] We view "the evidence and all reasonable inferences in the light most favorable to the prosecution"

---

[1] *United States v. Kieffer*, 991 F.3d 630, 634 (5th Cir. 2021) (quoting *United States v. Suarez*, 879 F.3d 626, 630 (5th Cir. 2018)).

No. 23-50626

and must affirm a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

We review preserved jury-instruction objections for abuse of discretion, subject to harmless-error review.[3] A district court's failure to give a defendant's requested instructions is an abuse of discretion if the requested instructions: "(1) are substantively correct; (2) are not substantially covered in the charge given to the jury; and (3) concern an important point in the trial so that the failure to give them seriously impairs the defendant's ability to present effectively a particular defense."[4] We will not reverse a conviction unless the challenged instruction "affected the outcome of the case."[5]

III

A

Wilkerson first argues that the evidence at trial was insufficient to support his convictions. Our analysis proceeds in two steps: We must determine (1) the appropriate legal standard for the relevant element of the offense, and then (2) whether the evidence adduced at trial was sufficient to satisfy that standard.[6]

---

[2] *Id.* (quoting *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014)).

[3] *United States v. Green*, 47 F.4th 279, 288 (5th Cir. 2022).

[4] *United States v. Hale*, 685 F.3d 522, 541 (5th Cir. 2012) (cleaned up).

[5] *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 917 F.3d 352, 357 (5th Cir. 2019) (quoting *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 388 (5th Cir. 2017)).

[6] *Cf. United States v. Staggers*, 961 F.3d 745, 756 (5th Cir. 2020) (explaining that "[s]ufficiency is measured against the *actual* elements of the offense" (emphasis in original)).

No. 23-50626

1

First, we must determine the appropriate legal standard.

Both of Wilkerson's convictions include as an element of the offense that the visual depictions show the minor engaged in "sexually explicit conduct."[7] The term "sexually explicit conduct" is statutorily defined as "actual or simulated (i) sexual intercourse . . . ; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area of any person."[8] The parties agree that the images and videos in this case do not qualify under any of the first four categories. The sole question, then, is whether they constitute a "lascivious exhibition" of the minor's genitals or pubic area.

Wilkerson and the Government disagree over the appropriate legal standard for "lascivious exhibition." The Government argues, in line with the district court, that the proper interpretation of "lascivious exhibition" is settled by our circuit precedent. As the Government explains, in *United States v. Grimes*, we defined "lascivious exhibition" as a "depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer."[9] And we further explained that in determining lasciviousness, we look to the six factors from *United States v. Dost*: (1) whether the focal point of the visual depiction is on the child′s genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive—that is, in

_____

[7] 18 U.S.C. § 2251(a); *id.* at § 2252A(a)(5)(B) (referring to "child pornography," which is defined in 18 U.S.C. § 2256(8)(A) as "involv[ing] the use of a minor engaging in sexually explicit conduct").

[8] 18 U.S.C. § 2256(2)(A).

[9] 244 F.3d 375, 381 (5th Cir. 2001) (quoting *United States v. Knox*, 32 F.2d 733, 745 (3d Cir. 1994)).

a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.[10] These factors are not necessarily exhaustive, and no single factor is dispositive.[11] We later affirmed this "lascivious exhibition" definition, including the use of the *Dost* factors, in *United States v. Steen*.[12]

Wilkerson disagrees. He urges us to abandon the *Grimes* definition and *Dost* factors because, according to him, they do not accurately reflect the law. Instead, Wilkerson argues that a "lascivious exhibition" must be performed "in a lustful manner that connotes the commission of a sexual act." Under our rule of orderliness, we are bound by a previous panel's decision "absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court."[13] Seeking to overcome that barrier, Wilkerson contends that *Grimes* is "out of step and inconsistent" with the Supreme Court's decision in *United States v. Williams* and its antecedents.[14]

Wilkerson argues as follows: In *Williams*, the Supreme Court explained that "sexually explicit conduct" has essentially the same meaning

---

[10] *Id*. at 380; *see also United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd*, 813 F.2d 1231 (9th Cir. 1987); *United States v. Carroll*, 190 F.3d 290, 297 (5th Cir. 1999) (adopting *Dost*), *vacated and reinstated in relevant parts*, 227 F.3d 486, 488 (5th Cir. 2000).

[11] *Grimes*, 244 F.3d at 380.

[12] 634 F.3d 822, 828 (5th Cir. 2011).

[13] *United States v. Medina-Cantu*, 113 F.4th 537, 539 (5th Cir. 2024) (quoting *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021)).

[14] *See* 553 U.S. 285 (2008).

as "sexual conduct" from *New York v. Ferber*.[15] And in *Ferber*, the Court, after recognizing that "sexual conduct" included the "lewd exhibition[s] of the genitals," noted that it had previously construed the phrase "lewd exhibition of the genitals" in *Miller v. California*, which found that the term referred to "the hard core of child pornography."[16] Finally, the Court separately explained that "lewd" has the same meaning as "lascivious."[17] Piecing all this together, Wilkerson argues that *Williams*, through *Ferber*, establishes that the definition of "lascivious exhibition" is the same as "lewd exhibition" in *Miller*—in other words, hard-core pornography. And because "lascivious exhibition" means hard-core pornography, it must be performed in a lustful manner that connotes the commission of a sexual act. Thus, according to Wilkerson, *Williams* "implicitly overrule[s]" our decision in *Grimes*.

Wilkerson's argument fails. Even in the wake of *Williams*, we have re-affirmed the binding nature of *Grimes*. In fact, we recently rejected the very argument Wilkerson now advances.[18] In *United States v. Taylor*, the defendant challenged his conviction for surreptitiously recording a minor on the grounds that our test for "lascivious exhibition . . . is overly expansive."[19] He also argued that our use of the *Dost* factors is overbroad under *Williams* and *Ferber* "because it allows for convictions based on images not depicting

_____

[15] *Id.* at 296 (citing *New York v. Ferber*, 458 U.S. 747, 751 (1982)).

[16] *Ferber*, 458 U.S. at 765–66 (citing *Miller v. California*, 413 U.S. 15, 25 (1973)); *id.* at 773.

[17] *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78–79 (1994) (adopting the reasoning of *United States v. X-Citement Video, Inc.*, 982 F.2d 1285, 1288 (9th Cir. 1992)).

[18] *See United States v. Taylor*, No. 23-40273, 2024 WL 1134728 (5th Cir. Mar. 15, 2024) (unpublished).

[19] *Id.* at *1.

minors in a sex act."[20] He urged us, instead, to follow a recent D.C. Circuit decision,[21] which held that "lascivious exhibition" requires that "the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in *any* type of sexual activity."[22] We declined and rightly recognized that our precedent forecloses these arguments.[23]

To be sure, *Taylor* itself is an unpublished opinion that is not binding. But it does present persuasive authority.[24] Even more, the cases cited in *Taylor* are published opinions that post-date the Supreme Court's decision in *Williams* and confirm that, in this circuit, "lascivious exhibition" does not require the commission of a sexual act.[25] Wilkerson counters that none of those published decisions presented the same argument he now advances with respect to *Williams*'s supposed implicit overruling of *Grimes*. But the rule of orderliness applies even when a party raises "new arguments that were not presented to a prior panel."[26] Moreover, even if the precise packaging of Wilkerson's argument is new, our decision in *United States v. Mecham* directly cited both *Williams* and *Ferber* and nevertheless rejected any suggestion that "lascivious exhibition" requires "that the minor

---

[20] *Id.*

[21] *Id.*

[22] *United States v. Hillie*, 39 F.4th 674, 685 (D.C. Cir. 2022).

[23] *Taylor*, 2024 WL 1134728, at *1.

[24] *See Avelar-Oliva v. Barr*, 954 F.3d 757, 771 (5th Cir. 2020)

[25] *See Steen*, 634 F.3d at 826–28 (applying the definition of "lascivious exhibition" from *Grimes* and using the *Dost* factors); *United States v. McCall*, 833 F.3d 560, 563–64 (5th Cir. 2016) (finding that a surreptitious recording of a nude minor constituted a "lascivious exhibition").

[26] *Mendez v. Poitevent*, 823 F.3d 326, 335 (5th Cir. 2016).

affirmatively *commit a sexual act* or be sexually abused."[27] We therefore agree with *Taylor* that our published, post-*Williams* cases provide binding authority that (1) *Williams* did not abrogate *Grimes*, and (2) the *Grimes* definition of "lascivious exhibition," including the use of the *Dost* factors, remains the law in this circuit.[28]

Importantly, even if we agreed with Wilkerson that our post-*Williams* precedent does not itself foreclose the argument that *Grimes* has been abrogated, we would reach that conclusion ourselves anyway. For a Supreme Court case to abrogate binding circuit precedent, the Supreme Court decision "must unequivocally overrule prior precedent; mere illumination of a case is insufficient."[29] Nothing in *Williams* "unequivocally overrule[s]" *Grimes*.

True, *Williams* does state that "sexually explicit conduct" has the same meaning as "sexual conduct," which the Supreme Court in *Miller* characterized as "hard core pornography."[30] But in using the phrase "hard core pornography," *Miller* was simply describing regulatable material that included the "lewd exhibition of the genitals."[31] In other words, the "lewd exhibition of the genitals" is simply a type of hard-core pornography. There is nothing inconsistent between the Supreme Court describing "lewd" or

---

[27] 950 F.3d 257, 266 (5th Cir. 2020) (emphasis added) (quoting *United States v. Traweek*, 707 F. App'x 213, 215 n.2 (5th Cir. 2017)).

[28] *See Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018) ("[T]he determination whether a given precedent has been abrogated is itself a determination subject to the rule of orderliness.").

[29] *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (quoting *United States v. Petras*, 879 F.3d 155, 164 (5th Cir. 2018)).

[30] *Miller*, 413 U.S. at 28.

[31] *Id.* at 18 n.2, 25.

"lascivious exhibition" as hard-core pornography and *Grimes*'s definition for "lascivious exhibition" as a "depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children in order to excite lustfulness or sexual stimulation in the viewer." And just because the Supreme Court described "lascivious exhibition" as hard-core pornography, that does not somehow mean, as Wilkerson contends, that "lascivious exhibition" must include the commission of a sexual act.

Wilkerson seizes on a single sentence in *Williams* where the Court states that "'[s]exually explicit conduct' connotes actual depiction of the sex act rather than merely the suggestion that it is occurring" and claims that this sentence shows that *Williams* requires "the commission of a sexual act" for there to be "sexually explicit conduct."[32] But this sentence occurs as part of a broader discussion as to why *one* of the multiple categories included in the definition of "sexually explicit conduct"—namely "simulated sexual intercourse"—must be actually depicted, rather than "merely suggested";[33] it has no bearing on what constitutes "lascivious exhibition," which is an entirely separate category of "sexually explicit conduct." Indeed, *Williams* does not discuss the proper interpretation of "lascivious exhibition" at all. And to the extent this passage from *Williams* might have any applicability to this case, it requires only that the images and videos actually depict—rather than "merely suggest[]"[34]—the "lascivious exhibition of the genitals or pubic area." Again, nothing from this passage in *Williams* suggests that a "lascivious exhibition" must include the commission of a "sex act."

---

[32] *Williams*, 553 U.S. at 297.

[33] *See id.*

[34] *Id.*

In short, even assuming the question of whether *Williams* abrogates *Grimes* was not already answered in the negative, we would hold that it does not. We therefore conclude that *Grimes*'s definition and the use of the *Dost* factors is the appropriate standard for determining whether the depictions constitute a "lascivious exhibition."

2

Having determined the correct standard for "lascivious exhibition," the next question is whether the evidence was sufficient to meet that standard.

As already discussed, under *Grimes*, we determine whether visual depictions constitute a "lascivious exhibition of the genitals or pubic area" by applying the six *Dost* factors.[35] Those factors are not exhaustive, and no single factor is dispositive; rather, a finding of lasciviousness "will have to be made based on the overall content of the visual depiction."[36] We apply the "clear error standard" when reviewing a jury's conviction based on its factual finding that images constituted a lascivious exhibition of the genitals.[37] The jury here committed no such error.

As to the first factor, the "focal point" of the images was arguably on the child's genitalia or pubic area.[38] There were multiple images showing the minor in her bedroom fully or partially nude while changing her clothes and entering or exiting the shower. She is shown in various positions, and Wilkerson made efforts to keep her in the frame. In some of the images, the

---

[35] *Grimes*, 244 F.3d at 380; *see supra*, at 6–7.

[36] *Steen*, 634 F.3d at 826–27 (quoting *Dost*, 636 F. Supp. at 832).

[37] *Id*. at 826.

[38] *Id.*

minor is "bending over at the waist" with the area between her legs visible but her upper body obscured. While most of these images were not zoomed in on the minor's genitals or pubic area, the jury heard testimony that at least one still image, taken from one of the videos, was zoomed in to show the fully nude minor holding a pair of panties above her waist with her pubic region "still visible."

"The second and third factors consider whether the setting or pose of the depiction is sexually suggestive or unnatural."[39] Here, all the visual depictions took place inside the minor's bedroom, and several captured her exiting the shower or sitting on her bed. Bedrooms or beds are the "[t]raditional settings" that qualify as sexually suggestive,[40] and showers can also constitute such settings.[41] Similarly, the jury could have found images of a minor bending at the waist with her pubic area visible to be a sexually suggestive or unnatural pose.[42] Wilkerson counters that since the minor was acting like a normal teenager changing her clothes in her bedroom and did not know she was being recorded, these factors are unmet. But we have previously rejected the idea that a minor who is surreptitiously recorded showering as part of her regular routine is not involved in "lascivious

---

[39] *Id.* at 827.

[40] *Id.*

[41] *See McCall*, 833 F.3d at 563–64 (finding a video of a minor preparing to shower and exiting a shower to be a "lascivious exhibition"); *see also United States v. McCoy*, 108 F.4th 639, 646 (8th Cir. 2024) ("[The defendant] arranged a setting, outside a shower, that is sexually suggestive."); *United States v. Schuster*, 706 F.3d 800, 808 (7th Cir. 2013) ("But showers and bathtubs are frequent hosts to fantasy sexual encounters as portrayed on television and in film." (internal quotation marks and citation omitted)).

[42] *McCoy*, 108 F.4th at 647 (explaining that a reasonable jury could find a video of a "minor female bending over while wet" to be sexually suggestive).

exhibition."[43] As we explained, the focus of the "lascivious exhibition" inquiry "is the *depiction*—not the minor."[44] There is no clear error for a jury to conclude that images and videos of a nude minor bending over in her bedroom after exiting the shower and sitting on her bed qualify as sexually suggestive or unnatural.

Wilkerson concedes that the images depict nudity and therefore satisfy the fourth factor, and the Government similarly concedes that the fifth factor—whether the images suggest sexual coyness—is not met.

The sixth and final factor is "whether the visual depiction is intended or designed to elicit a sexual response in the viewer."[45] Here, not only does the visual content, which included multiple images and videos of a nude minor in various poses, suggest that the depictions are designed to "excite lustfulness or sexual stimulation in the viewer," there is also audio content providing further confirmation. Specifically, in one of the videos Wilkerson is heard moaning. Later, when the minor exposes her back and buttocks, Wilkerson says, "there you go." And as the naked minor moves about her room, Wilkerson can be heard saying, "good lord." Finally, after the fully nude minor steps out of the frame, Wilkerson implores her to "come on back."

Wilkerson argues that this audio is irrelevant because it simply shows that the depiction was sexually arousing to him. This dovetails with a broader argument Wilkerson advances that the use of this *Dost* factor impermissibly focuses on the subjective response of the viewer. Not so. The question is not whether the viewer or maker of a visual depiction himself has a sexual

---

[43] *See McCall*, 833 F.3d at 563 n.4.

[44] *Id.*

[45] *Steen*, 634 F.3d at 826.

response, it is whether the purpose of producing the depiction and its design is to elicit such a response. For example, a photographer may be guilty of child pornography for images he produces for the purpose of selling them to pedophiles, even if the photographer himself is not aroused by the images.[46] Accordingly, the relevance of the video's audio is not in showing that Wilkerson actually had a sexual response; rather, it is evidence that Wilkerson's purpose in capturing the video and the video's design was to elicit a sexual response. A reasonable jury could conclude from both the visual and audio components of the video, that the purpose of creating the video, and its intended design, was to elicit a sexual response in the viewer.

Wilkerson spends much of his briefing arguing that this case's facts are nearly identical to those in *Steen*, and because the evidence in *Steen* was insufficient to support a finding of "lascivious exhibition," that outcome controls here. In *Steen,* the defendant's interest in voyeurism led him to capture a video briefly depicting the pubic region of a girl he did not know to be a minor in a tanning salon.[47] The video showed the minor's pubic region on the far side of the frame and only for one and a half seconds.[48]

This case shares little in common with *Steen* and more closely resembles the facts in *United States v. McCall*. In that case, the defendant

---

[46] *See id.* at 829 (Higginbotham, J., concurring). Wilkerson cites this concurrence by Judge Higginbotham in support of his argument. And while Judge Higginbotham did suggest that the sixth *Dost* factor is "especially troubling," his concern appears to be that the sixth factor could stray from the statutory language which "does not suggest that the definition of pornography is contingent upon what arouses the defendant." *Id.* As we explain, however, the subjective feelings of any particular viewer is not part of the inquiry under this factor.

[47] *Steen*, 634 F.3d at 824.

[48] *Id.*

surreptitiously recorded a minor before and after her shower.[49] And like Wilkerson, the defendant in *McCall* also attempted to analogize his case to *Steen*.[50] We rejected that attempt because the defendant had "purposefully filmed" a nude minor "for a number of minutes" and for the "purpose of satisfying himself during masturbation."[51] Similar differences from *Steen* exist here. Wilkerson purposefully captured multiple visual depictions of a naked minor; he took several pictures, including one zoomed in on the minor's pubic region, and two videos, one of which was almost four minutes long. Moreover, while the video in *Steen* was captured in a public tanning salon and motivated by mere voyeurism, the depictions in this case showed the minor in her bedroom, with several of them capturing her emerging from the shower—just like in *McCall*. Finally, like *McCall*, and unlike *Steen*, there is evidence in this case, including the audible commentary, suggesting that Wilkerson's purpose and design in capturing the depictions was to elicit a sexual response.

In sum, we do not find that the jury committed clear error in concluding, based on the *Dost* factors, that the visual depictions in this case constituted a "lascivious exhibition."

B

Wilkerson also argues that his convictions should be vacated because the district court (1) failed to define "lascivious exhibition" in its jury instruction, and (2) abused its discretion in denying Wilkerson's proposed instruction for that term.

---

[49] *McCall*, 833 F.3d at 561.

[50] *Id.* at 563–64.

[51] *Id.* at 564.

No. 23-50626

We dispose with the second challenge first. Wilkerson proposed a jury instruction that tracks his preferred standard for "lascivious exhibition." Specifically, he wanted the jury to be instructed that a "'lascivious exhibition' must be performed in a lustful manner that connotes the commission of a sexual act." But as discussed above, that is not the standard for "lascivious exhibition" in this circuit.[52] Therefore, the district court did not abuse its discretion in denying Wilkerson's proposed instruction.

As for the first challenge, Wilkerson admits that the district court relied on this circuit's pattern jury instruction but argues that the instruction includes an error of law for two reasons: (1) it fails to provide the jury with a statutory definition of "lascivious exhibition," and (2) it incorrectly implies that the *Dost* factors are the definition of "lascivious exhibition" rather than an aid in determining whether a "lascivious exhibition" took place. We disagree.

The pattern jury instruction uses the statute's definitions and descriptions of "sexually explicit conduct" and "lascivious exhibition." It thus accurately conveys the statute's requirements.[53] To be sure, in *Grimes*, we described "lascivious exhibition" as meaning "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer," but we clarified that this was "the ordinary meaning of the phrase."[54]

---

[52] *See supra*, at 8–12.

[53] *See United States v. Stockman*, 947 F.3d 253, 260 (5th Cir. 2020) ("An instruction that mirrors relevant statutory text will almost always convey the statute's requirements." (internal quotation marks and citation omitted)).

[54] *Grimes*, 244 F.3d at 381 (quoting *Knox*, 32 F.2d at 745).

Nothing requires the district court to include the precise language from *Grimes* in its jury instructions.[55]

Nor does the pattern jury instruction imply that the *Dost* factors are themselves the statutory definition of "lascivious exhibition." To the contrary, the instruction is entirely consistent with our precedent. It instructs the jury that it must consider "the overall content of the material" and that it "may consider" the *Dost* factors in assessing lasciviousness. And most importantly, it warns the jury that the *Dost* factors are "not exhaustive, and no single factor is dispositive." This is precisely how we have described the standard for "lascivious exhibition" and use of the *Dost* factors in *Grimes* and *Steen*.[56] Simply put, the district court did not commit legal error by adopting a pattern jury instruction that adopts the very language we have used to describe the law.

## IV

The trial evidence was sufficient to support Wilkerson's convictions, and the district court did not abuse its discretion in adopting the pattern jury instruction. Accordingly, the district court's judgment is AFFIRMED.

---

[55] *See Janvey*, 856 F.3d at 389 ("As a general matter, terms which are reasonably within the common understanding of juries, and which are not technical or ambiguous, need not be defined in the trial court's charge." (cleaned up)); *see also Stockman*, 947 F.3d at 260 (explaining no authority requires "a district court's jury instructions [to] go beyond the language of the statute").

[56] *See Grimes*, 244 F.3d at 380; *Steen*, 634 F.3d at 826–27.