# United States Court of Appeals for the Fifth Circuit

No. 24-20401

United States Court of Appeals
Fifth Circuit

**FILED**

September 8, 2025

Lyle W. Cayce
Clerk

Gregory Wilhite,

*Plaintiff—Appellant*,

*versus*

Ark Royal Insurance Company,

*Defendant—Appellees*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-1114

———————————————————

Before Higginson, Willett, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

This is an insurance dispute. Gregory Wilhite sued his insurer, Ark Royal, even though the company had already paid him everything the policy required. Wilhite's claims are foreclosed under binding circuit and Texas Supreme Court precedent. We therefore AFFIRM summary judgment for Ark Royal.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

24-20401

I

In February 2021, Gregory Wilhite submitted a homeowners insurance claim to Ark Royal for a burst water pipe. Over the next five months, Ark Royal conducted two inspections of the property and made several payments to Wilhite. Not satisfied, Wilhite invoked his policy's appraisal provision. The appraisal award concluded in November 2021 with a higher damages assessment. Consistent with the policy, Ark Royal paid Wilhite the balance—plus statutory interest.

Nevertheless, Wilhite sued Ark Royal in state court. Ark Royal removed the case to federal court, after which Wilhite filed an amended complaint asserting four claims:[1] (1) breach of contract; (2) violations of the Texas Prompt Payment of Claims Act (TPPCA); (3) breach of the common-law duty of good faith and fair dealing; and (4) violations of Chapter 541 of the Texas Insurance Code (Unfair Methods of Competition and Unfair or Deceptive Acts or Practices).

Ark Royal moved for summary judgment on all claims. It argued that Wilhite could not prevail because Ark Royal had already paid all amounts owed—including statutory interest—and Wilhite had not shown any independent injury. In response, Wilhite conceded that his contract and TPPCA claims were not viable but argued that his two tort claims—under common law and Chapter 541—should proceed to trial. The district court disagreed and granted summary judgment to Ark Royal on all claims.

This appeal followed.

---

[1] Wilhite also sued Progressive Property Insurance Company and American Strategic Insurance Corporation. But the district court later dismissed those defendants without prejudice, and Wilhite does not challenge that ruling on appeal. Accordingly, Ark Royal is the sole defendant on appeal.

2

## II

We review summary judgment de novo, applying the same standard as the district court. *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th Cir. 2023). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[I]n this diversity-jurisdiction case, Texas law applies to . . . question[s] of substantive law." *Antero Res., Corp. v. C&R Downhole Drilling Inc.*, 85 F.4th 741, 746 (5th Cir. 2023).

## III

Wilhite maintains on appeal that his tort claims are viable. He contends that under Texas law, an insured can recover for insurance-related torts even when the insurer has already paid out the policy's benefits. Ark Royal disagrees. It argues that Wilhite's argument is foreclosed by binding precedent. Moreover, Ark Royal asserts that we lack jurisdiction over this purportedly untimely appeal.

## A

We begin—as we must—with jurisdiction. *See United States v. Rodriguez*, 33 F.4th 807, 811 (5th Cir. 2022) ("[C]ourts must assess their jurisdiction before turning to the merits."). Ark Royal contends that Wilhite failed to timely file his notice of appeal—a jurisdictional prerequisite. *See Kinsley v. Lakeview Reg'l Med. Ctr. LLC*, 570 F.3d 586, 588 (5th Cir. 2009) ("The filing of a timely notice of appeal, within thirty days after entry of the court's judgment, is mandatory and jurisdictional." (citing *Bowles v. Russell*, 551 U.S. 205, 214 (2007))).

Under the federal rules, a party must file its notice of appeal "within 30 days after entry of the judgment or order." FED. R. APP. P. 4(a)(1)(A).

But the rules also permit a district court to extend that time if the party (1) requests an extension within 30 days after the original 30 days expires (that is, within 60 days after entry of the judgment or order), and (2) shows "excusable neglect or good cause." *Id.* at 4(a)(5)(A); *see also Sudduth v. Tex. Health & Hum. Servs. Comm'n*, 830 F.3d 175, 178–79 (5th Cir. 2016). We review a district court's order on an extension request for abuse of discretion. *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 820 (5th Cir. 2007). And when the district court grants the extension—as opposed to denying it—we afford that decision even "more leeway." *Id.*

Here, the district court entered its summary-judgment order on May 30, 2024. So Wilhite had until July 1 to file his notice of appeal,[2] and until July 31 to seek an extension. He missed the notice-of-appeal deadline but sought an extension on July 24, 2024—within the time period permitted by Rule 4(a)(5)(A). The district court granted an extension based on its finding of excusable neglect. Thus, the question before us is whether that finding was an abuse of discretion.

In deciding whether a party has shown excusable neglect, we have adopted the Supreme Court's standard from *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380 (1993). *See Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 468–69 (5th Cir. 1998) (applying *Pioneer*'s standard to Rule 4(a)(5)). A determination of excusable neglect "is at bottom an equitable one." *Id.* at 468 (quoting *Pioneer*, 507 U.S. at 395). We must consider all "relevant circumstances surrounding the party's omission," including: (1) "the danger of prejudice," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay,

---

[2] Thirty days from May 30 is actually June 29. But because June 29, 2024, fell on a Saturday, Wilhite had until the following Monday—July 1—to file his notice. *See* Fed. R. App. P. 26(a)(1)(C).

including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Id.* (quoting *Pioneer*, 507 U.S. at 395); *see also Stotter*, 508 F.3d at 820.

Ark Royal's main argument is that the district court abused its discretion because Wilhite failed to provide an adequate reason for missing the notice-of-appeal deadline. According to Wilhite, that misstep resulted from his counsel's busy schedule, which caused his counsel to miscalculate the filing deadline as July 5, rather than July 1. To be sure, a missed deadline caused by mistake is a weaker excuse than one beyond the party's (or counsel's) control. But excusable neglect "is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392 (quoting 4A C. Wright & A. Miller, *Federal Practice and Procedure* § 1165 (2d ed. 1987)). Rather, it "plainly" permits a district court, "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness." *Id.* at 388; *see also United States v. Clark*, 51 F.3d 42, 43 (5th Cir. 1995) (noting that *Pioneer* "rejected the argument that excusable neglect was limited to errors caused by circumstances beyond the late-filing party's control").

We have previously declined to reverse a district court's grant of an extension based on excuses similar to Wilhite's. For example, in *Stotter v. University of Texas at San Antonio*, we upheld a district court's order permitting an untimely notice of appeal on the ground that the party's counsel accidentally entered the incorrect year into her new computer-based calendar. *See* 508 F.3d at 820; *see also U.S. ex rel. King v. Univ. of Tex. Health Sci. Ctr.-Hous.*, 544 F. App'x 490, 493–94 (5th Cir. 2013) (upholding extension based on counsels' mistaken belief due to their busy dockets that they had 60 days to file a notice of appeal); *Sparks v. L.M. Berry & Co.*, 184 F.3d 815, at *3 (5th Cir. 1999) (upholding extension based on counsel's "busy trial practice, an ill child, and a miscalculation of the days").

24-20401

By contrast, the single relevant case on which Ark Royal relies, *Midwest Employers Casualty Co. v. Williams*, 161 F.3d 877, 878 (5th Cir. 1998), is distinguishable.[3] In *Midwest Employers*, we reversed a magistrate judge's decision permitting an untimely appeal because the party's counsel had misread the requirements for seeking a new trial under Federal Rule of Civil Procedure 6(e). *Id.* at 878. The attorney intentionally "allowed the appeal deadline to pass" based on his mistaken belief that he had three extra days to seek a new trial. *Id.* at 880. We held that the magistrate abused his discretion because our precedent had previously described this very same mistake as "weigh[ing] heavily against a finding of excusable neglect." *Id.* (quoting *Halicki*, 151 F.3d at 470). We contrasted this situation with a case where an attorney misunderstood the appeal deadline itself. *Id.* (discussing *United States v. Evbuomwan*, 36 F.3d 89 (5th Cir. 1994)). We explained that because the attorney in *Midwest Employers* "did not misinterpret a rule governing the time to appeal" and intentionally allowed the appeal deadline to pass, "[w]e cannot equate this with [a] good-faith misinterpretation of an appeal deadline." *Id.*

Our case is more similar to *Stotter* and those instances where we have declined to reverse a district court's grant of extension than to *Midwest Employers*. Here, we have no precedent describing Wilhite's counsel's mistake as "weigh[ing] heavily against a finding of excusable neglect."

---

[3] The other cases Ark Royal cites for the proposition that an attorney's miscalculation of the appeal deadline is not excusable neglect were all decided before *Pioneer* established the relevant standard. *See Clark*, 51 F.3d at 44 (explaining that *Pioneer* allows "somewhat more room for judgment in determining whether mistakes of law are excusable than does the strict standard for excusable neglect espoused by some of our prior decisions" and that "[t]o the extent, then, that our prior decisions strictly interpret excusable neglect in conflict with *Pioneer*, they are disapproved").

*Midwest Employers*, 161 F.3d at 880. Moreover, unlike in *Midwest Employers*, the attorney's mistake here related to a miscalculation of the appeal deadline itself. That mistake is thus more like the attorney accidentally recording the incorrect year in *Stotter* than it is to the attorney's misunderstanding of an ancillary federal rule in *Midwest Employers*. We conclude that counsel's miscalculation is the sort of inadvertent mistake that may qualify as excusable neglect.

Our conclusion is buttressed by the other excusable-neglect considerations. *See Cowart v. Ingalls Shipbuilding*, 192 F.3d 126, at *1 (5th Cir. 1999) (noting that *Pioneer* "rejected the dissenters' position that only the cause of the delay should matter"). Ark Royal has not even attempted to show that it would suffer any prejudice from allowing the appeal, *see id.* at *2 (overruling district court's denial of an extension because no "real prejudice occurred as a result of the late filing"), nor that the length of delay will have any negative impact on the judicial proceedings. And its only argument for bad faith is that Wilhite waited 22 days after discovering the blown deadline to seek an extension. But Wilhite filed his extension well within the time permitted by Rule 4(a)(5)(A). We decline to find bad faith based on a party's undisputed compliance with the time requirements of the Federal Rules.

"Given the leeway granted to district courts under [our] standard, the minimal delay and prejudice involved, and the excuse provided," *Stotter*, 508 F.3d at 820, we cannot say that the district court abused its discretion in granting Wilhite's motion for an extension.

## B

The merits question is narrow: does Texas law permit tort recovery when the insured has already been made whole under the policy. It does not.

24-20401

Wilhite argues that Texas law—and specifically Chapter 541 of the Insurance Code—permits cumulative remedies; so even if Ark Royal's payment precludes recovery on his breach-of-contract claim, it doesn't affect his statutory and common-law tort claims. This argument is foreclosed by our recent decision in *Mirelez v. State Farm Lloyds*, 127 F.4th 949 (5th Cir. 2025). The facts of *Mirelez* are virtually identical to this case. Like Wilhite, the plaintiff in *Mirelez* submitted a homeowners insurance claim and invoked appraisal. *Id.* at 950. The insurer paid the full appraisal amount—plus interest—but the plaintiff sued, pressing the very same claims brought by Wilhite. *Id.* The district court granted summary judgment to the insurer because the plaintiff "had been fully compensated under the policy." *Id.* The plaintiff appealed only his tort-based challenges, arguing "that an insured can recover actual and treble damages in tort—even when an appraisal award, any applicable interest, and any payments due under the insurance policy were paid out," and that "Texas case law does not require him to prove an independent injury." *Id.* at 951.

We disagreed. As we explained, the Texas Supreme Court "held, quite explicitly, that if the only 'actual damages' that a plaintiff seeks are policy benefits that have already been paid pursuant to an appraisal provision in that policy, an insured cannot recover for bad faith either under Chapter 541 of the Texas Insurance Code or in common law tort." *Id.* (citing *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 135 (Tex. 2019)). We concluded that because the plaintiff "recovered his entitled-to insurance benefits in full through payment of the appraisal award and interest . . . [he] cannot maintain his extracontractual bad faith claims in the absence of evidence supporting an independent injury caused by alleged violations of Chapter 541 of the Insurance Code or an alleged breach of duty owed." *Id.* at 953.

We then reaffirmed *Mirelez* less than one week later in *Senechal v. Allstate Vehicle and Property Insurance Company*, 127 F.4th 976, 978–79 (5th

8

Cir. 2025) (affirming summary judgment against plaintiff's tort claims because his insurance paid the appraisal award, and he presented "no evidence that he suffered an independent injury"); *see also First Baptist Church Daisetta Tex. v. Church Mut. Ins. Co.*, No. 24-40594, 2025 WL 893797, at *2 (5th Cir. Mar. 24, 2025) (rejecting tort-based insurance claims in light of *Mirelez*); *Guiles v. GeoVera Advantage Ins. Servs., Inc.*, No. 24-40411, 2025 WL 893755, at *2 (5th Cir. Mar. 24, 2025) (same).

*Mirelez* is binding under our rule of orderliness. *See United States v. Wilkerson*, 124 F.4th 361, 367 (5th Cir. 2024) ("[W]e are bound by a previous panel's decision absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." (internal quotation omitted)). Wilhite concedes that *Mirelez* is on point.[4] His only response is that the *Mirelez* panel did not address the precise "statutory construction argument" he raises here. "But the rule of orderliness applies even when a party raises 'new arguments that were not presented to a prior panel.'" *Wilkerson*, 124 F.4th at 368 (quoting *Mendez v. Poitevent*, 823 F.3d 326, 335 (5th Cir. 2016)); *see also United States v. Berry*, 951 F.3d 632, 636 (5th Cir. 2020) ("Under our rule of orderliness, though, an earlier panel decision binds even if that panel's opinion does not explicitly address arguments presented to the later panel.").

Moreover, Wilhite's argument fails on its own terms. *Mirelez*'s conclusion was based on the Texas Supreme Court's "quite explicit[]"

---

[4] Surprisingly, Wilhite's opening brief never acknowledges *Mirelez*, even though it was decided almost three weeks before Wilhite filed his opening brief—and Wilhite's counsel was also counsel of record in *Mirelez*. Counsel should bear in mind that he has a duty "to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." *Johnson v. Lumpkin*, 76 F.4th 1037, 1038 (5th Cir. 2023) (quoting MOD. R. PROF. COND. 3.3(a)(2) and citing TEX. DISCIPLINARY R. PROF. COND. 3.03(a)(2)).

holding, *Mirelez*, 127 F.4th at 951, which the *Mirelez* panel was bound to follow, *see City of San Antonio v. Hotels.com, L.P.*, 876 F.3d 717, 722 (5th Cir. 2017) ("It is more than well-known that, when, as here, diversity of citizenship is the basis for federal jurisdiction, we must apply state law as announced by that state's highest court . . . ." (internal quotation omitted)). So even if the plaintiff in *Mirelez* had raised the same statutory-construction argument Wilhite presses here, and even if the *Mirelez* panel had found it persuasive, it would nonetheless be bound by Texas law as announced by the Texas Supreme Court. It could not adopt its own interpretation of Texas law. Similarly, even if we were not bound by *Mirelez*, we would still be required to follow the Texas Supreme Court.

In sum, *Mirelez* forecloses Wilhite's appeal. An insured cannot maintain tort claims against his insurer if he has received his full appraisal award absent evidence of an independent injury.

IV

We AFFIRM summary judgment for Ark Royal.